# United States Court of Appeals
## For the First Circuit

No. 18-1195

PLIXER INTERNATIONAL, INC.,

Plaintiff, Appellee,

v.

SCRUTINIZER GMBH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Selya, and Lipez,
Circuit Judges.

James G. Goggin, with whom Verrill Dana, LLP was on brief, for appellee.
John A. Woodcock III, with whom Edward J. Sackman and Bernstein Shur PA were on brief, for appellant.

September 13, 2018

**LYNCH**, **Circuit Judge**.   Given the particular facts of this case, we affirm the thoughtful holding of the district court that the exercise of specific personal jurisdiction against a German corporation under Federal Rule of Civil Procedure 4(k)(2) does not offend the Due Process Clause of the United States Constitution.   We note that this is an area in which the Supreme Court has not yet had the occasion to give clear guidance, and so we deliberately avoid creating any broad rules.

I.

We take the following facts from the undisputed record. Scrutinizer GmbH[1] (Scrutinizer) is a German corporation with its principal place of business in Kassel, Germany.   Through its interactive, English-language website, Scrutinizer runs a "self-service platform" that helps customers build better software. Scrutinizer brings its customers' code from a third-party hosting service like GitHub[2] to its "controlled cloud environment," where it runs "software analysis tools" meant to "improve source-code quality, eliminate bugs, and find security vulnerabilities."

---

[1]   GmbH, or Gesellschaft mit beschränkter Haftung, is German for "company with limited liability."   See TMT North Am., Inc. v. Magic Touch GmbH, 124 F.3d 876, 879 n.1 (7th Cir. 1997).

[2]   Scrutinizer identifies GitHub as an example of a third-party hosting service.   GitHub offers, among other things, repositories (digital storage spaces) for developers' code.   See Features, GitHub, https://github.com/features (last visited Sept. 10, 2018).

Scrutinizer offers potential customers a fourteen-day free trial. In the course of its activities, Scrutinizer employs Google Analytics.

Customers who contract to use Scrutinizer's online service can pay only in euros. Scrutinizer's standard contract with those customers contains a forum-selection clause and a choice-of-law clause that provide that all lawsuits relating to the contract be brought in German courts and under German law. Scrutinizer maintains no U.S. office, phone number, or agent for service of process; it directs no advertising at the United States; and its employees do not go to the United States on business.

Scrutinizer provides its service globally. In an affidavit, Scrutinizer's founder said that customers can use the service "anywhere where Internet access is available." Scrutinizer's website states that it is "[t]rusted by over 5000 projects and companies around the world." Over three-and-a-half years, from January 2014 to June 2017,[3] Scrutinizer sold its services to 156 U.S. customers. These sales occurred in thirty states, and the revenue from the contracts remitted to Scrutinizer

---

[3] Plixer's discovery request had as its "relevant time period" the period "from January 1, 2014 until the present day." Scrutinizer responded to that request on June 2, 2017. Scrutinizer's response identified the "aggregate number of customers it has [had] in each state and the aggregate sales amount in each state" "[s]ince 2013." Although "since 2013" to June 2017 suggests a longer time period, the parties and the district court all consider it three-and-a-half years.

€165,212.07.  This amount was just under $200,000 in June 2017. The record does not reveal what percentage of Scrutinizer's total revenue comes from the United States.  It does, however, detail Scrutinizer's customer numbers by state: from fifty-one in California to one in each of eight other states.  During the three-and-a-half year period, Scrutinizer had two Maine customers, who collectively paid Scrutinizer €3,100 for its services.

Plixer International, Inc. (Plixer), a Maine corporation, sued Scrutinizer in federal district court in Maine on November 21, 2016, for trademark infringement.  Plixer owns the U.S. registered mark "Scrutinizer," for which it filed in July 2015.  Plixer's trademark application said that Plixer used the mark as early as November 2005.  That application covered "[c]omputer software and hardware for analyzing, reporting and responding to malware infections and application performance problems, used in the field of information technology."  In its complaint, Plixer alleged that Scrutinizer's use of the term "Scrutinizer" caused "confusion, mistake or deception as to the source" of Scrutinizer's services; that the use "will infringe and/or dilute Plixer's prior rights" in the mark; that the use "will interfere with Plixer's use" of its mark; and that Scrutinizer's "services are closely related to the services covered by Plixer's" mark, so "the public is likely to be confused about whether Plixer is the source of [Scrutinizer's] services or

whether Plixer is affiliated with or the sponsor of [Scrutinizer's] services."

Plixer gave two bases for personal jurisdiction over Scrutinizer, only one of which is at issue in this appeal.[4]  It said that Scrutinizer's nationwide contacts with the United States supported specific jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  After rejecting an initial motion to dismiss,[5] the district court allowed limited jurisdictional discovery.

In January 2017, after this lawsuit began, Scrutinizer filed a U.S. trademark application for "Scrutinizer."  The record is silent on the reasons why Scrutinizer filed this application.

On prima facie review, the district court found that it could constitutionally exercise specific personal jurisdiction over Scrutinizer under Rule 4(k)(2).  Plixer Int'l, Inc. v. Scrutinizer GmbH, 293 F. Supp. 3d 232, 245 (D. Me. 2017).  It held that Scrutinizer "operated a highly interactive website that sold its cloud-based services directly through the website, that it was

---

[4]  Plixer also claimed that the court had specific jurisdiction over Scrutinizer based on its business in Maine.  The district court found that Scrutinizer's Maine contacts, by themselves, were insufficient to support jurisdiction. Scrutinizer "could not reasonably have expected to be haled into a Maine forum" based on sales to two forum residents, so the exercise of jurisdiction would be unreasonable on that basis. Plixer Int'l, Inc. v. Scrutinizer GmbH, 293 F. Supp. 3d 232, 245 (D. Me. 2017).  Plixer has not challenged that determination here.

[5]  In that order, the district court also dismissed by agreement any claim of general jurisdiction over Scrutinizer.

open to business throughout the world, that it accepted recurrent business from the United States in a substantial amount, and that it did so knowingly." Id. at 241. The district court concluded that the criteria for purposeful availment in the United States had been met. Id. at 242-43. The district court also found that the exercise of jurisdiction was reasonable and that Scrutinizer had not carried its burden of proving otherwise. Id. at 245.

As part of its analysis, the district court considered Scrutinizer's application for U.S. trademark protection. The record gave the district court "no hint" why Scrutinizer had filed the application. Id. at 243. The district court did not find that contact conclusive, but said that "it does confirm [Scrutinizer's] desire to deal with the American market." Id. at 243.

We granted this interlocutory appeal on the district court's recommendation.[6]

---

[6] Scrutinizer moved for permission to file an interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted that motion. The district court found that the matter met the standard for such an appeal: it involved a controlling question of law on which there was substantial ground for difference of opinion and the resolution of which would help bring an end to the litigation. See 28 U.S.C. § 1292(b).

II.

A.   Standard of Review

The district court held that Plixer had made a prima
facie showing of personal jurisdiction.  On prima facie review, we
take the plaintiff's evidentiary proffers as true and we consider
uncontradicted facts proffered by the defendant.  C.W. Downer &
Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir.
2014).  The plaintiff's burden is to proffer evidence "sufficient
to support findings of all facts essential to personal
jurisdiction" without relying on unsupported allegations.  A Corp.
v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).  We
review de novo the district court's conclusion that Plixer met its
burden of proffering sufficient evidence to support findings of
all facts essential to personal jurisdiction.  See Foster-Miller,
Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 147 (1st Cir. 1995).

B.   Personal Jurisdiction

Plixer's basis for asserting personal jurisdiction over
Scrutinizer is Federal Rule of Civil Procedure 4(k)(2).[7]  Rule

---

[7]    Rule 4(k)(2) states:

For a claim that arises under federal law,
serving a summons or filing a waiver of
service establishes personal jurisdiction
over a defendant if:

(A) the defendant is not subject to
jurisdiction in any state's courts of general
jurisdiction; and

4(k)(2) has three requirements: (1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process. United States v. Swiss Am. Bank, Ltd. (Swiss I), 191 F.3d 30, 38 (1st Cir. 1999). All parties agree that the first two requirements are met here. The question is whether personal jurisdiction comports with due process.

This is a federal question case, so constitutional limits on jurisdiction come from the Due Process Clause of the Fifth Amendment. United States v. Swiss Am. Bank, Ltd. (Swiss II), 274 F.3d 610, 618 (1st Cir. 2001). The Fifth Amendment Due Process Clause requires the plaintiff to "show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state."[8] Id. To see if Scrutinizer's

---

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

[8] Scrutinizer argues for the first time on appeal that we should not aggregate its nationwide contacts. It says that, instead, we should require Plixer to make an additional showing that jurisdiction would be reasonable in Maine. Scrutinizer admits that it did not raise this argument before the district court, except in the most general of terms. The argument is waived. "Ordinarily, an appellant who has not proffered a particular claim or defense in the district court 'may not unveil it in the court of appeals.'" Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995) (quoting United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992)); see also McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) ("If claims are merely insinuated

- 8 -

nationwide contacts are adequate, we turn to the familiar "minimum contacts" framework.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Plixer has asserted specific personal jurisdiction over Scrutinizer, so the minimum contacts inquiry has three prongs: relatedness, purposeful availment, and reasonableness. That is, Plixer must show that (1) its claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable. A Corp., 812 F.3d at 59.

---

rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review.").

To the extent Scrutinizer asks us to revisit this Court's earlier precedent in Swiss II, we note that a newly constituted panel is bound by the decisions of prior panels in the same circuit. United States v. Malouf, 466 F.3d 21, 26-27 (1st Cir. 2006).

Plixer must show that it has met all three requirements to establish personal jurisdiction. C.W. Downer, 771 F.3d at 65. Scrutinizer has conceded the first requirement;[9] we hold that Plixer has met the remaining two.

## 1. Purposeful Availment

Plixer bears the burden of demonstrating that Scrutinizer has purposefully availed "itself of the privilege of conducting activities within the forum [], thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The purposeful availment requirement ensures that the exercise of jurisdiction is essentially voluntary and foreseeable, C.W. Downer, 771 F.3d at 66, not premised on a defendant's "random, fortuitous, or attenuated contacts," Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). This requirement applies to foreign defendants. See C.W. Downer, 771 F.3d at 66 (citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 885-87 (2011) (plurality opinion)).

The Supreme Court has not definitively answered how a defendant's online activities translate into contacts for purposes

---

[9] The district court concluded that Scrutinizer's use of third parties, like Google Analytics, that maintain servers in the United States, was not a suit-related U.S. contact. Plixer, 293 F. Supp. 3d at 240-41. Because Scrutinizer has conceded relatedness, we need not consider whether the district court's conclusion was correct.

- 10 -

of the minimum contacts analysis.  Instead, in Walden v. Fiore, it "le[ft] questions about virtual contacts for another day."  571 U.S. 277, 290 n.9 (2014).  In the absence of Supreme Court guidance, we are extremely reluctant to fashion any general guidelines beyond those that exist in law, so we emphasize that our ruling is specific to the facts of this case.

This Court has twice addressed "virtual contacts," but in cases whose factual scenarios are far-removed from this one.  One baseline principle has emerged: a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible. See A Corp., 812 F.3d at 61 (holding that "the mere availability of a passive website" cannot by itself subject a defendant to personal jurisdiction in the forum); Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 35 (1st Cir. 2010) (noting that the running of a "website that is visible in a forum and that gives information about a company and its products" cannot alone support the exercise of jurisdiction) (quoting McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005)); accord be2 LLC v. Ivanov, 642 F.3d 555, 558-59 (7th Cir. 2011); Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 713-14 (4th Cir. 2002).  The district court held that Scrutinizer had not merely made its website available in the United States; it had used that website

to engage "in sizeable and continuing commerce with United States customers." Plixer, 293 F. Supp. 3d at 242. As a result, Scrutinizer "should not be surprised at United States-based litigation." Id. We agree.

Scrutinizer attacks the district court ruling with three arguments. Scrutinizer first says that it did no more than enter its product into the stream of commerce. Second, it argues that its contacts with the United States were not its own but instead the product of its customers' unilateral actions. And third, it says that because it did not specifically target the United States it is not subject to specific personal jurisdiction in a United States forum. We reject each attack.

First, this is not the prototypical stream-of-commerce case. Cases including a standard stream-of-commerce analysis usually involve entities who cannot necessarily predict or control where downstream their products will land; intervening actors like distributors may take the products to unforeseeable markets. But no intervening actor can bring Scrutinizer's product somewhere unexpected. Scrutinizer's service goes only to the customers that Scrutinizer has accepted. This means that we have an objectively clearer picture of Scrutinizer's intent to serve the forum, the crux of the purposeful availment inquiry. See C.W. Downer, 771 F.3d at 66.

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), illustrates a significant difference between this case and the prototypical stream-of-commerce one. There, the Audi-owning plaintiff drove his car into Oklahoma, a market that the defendant did not then serve. See id. at 295. A car manufacturer cannot limit where its customers take its product. In contrast, Scrutinizer can take steps to limit access to its website. For instance, Scrutinizer could design its site to not interact with U.S. users, cf. Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 433 F.3d 1199, 1203 (9th Cir. 2006), but it has not done so. And Scrutinizer could take the low-tech step of posting a disclaimer that its service is not intended for U.S. users. See Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997); cf. Illinois v. Hemi Group LLC, 622 F.3d 754, 755 (7th Cir. 2010). Again, it has not done so.[10] Instead, Scrutinizer's website (https://scrutinizer-ci.com/) is globally accessible. In

---

[10] In contrast, Scrutinizer did take a step to deal with foreign contract-based litigation -- it included a forum-selection clause and a choice-of-law clause in its standard customer contract. Those clauses provide that all lawsuits be brought in German courts and under German law. But Scrutinizer never suggests that Plixer could bring this suit in an alternate forum, whether Germany or elsewhere. And the clauses do not apply here; Plixer is not a party to Scrutinizer's contract, and Scrutinizer does not suggest that Plixer is bound by the contract. As the district court correctly noted, those clauses suggest that Scrutinizer "knew it was extending its reach outside Germany." Plixer, 293 F. Supp. 3d at 241.

- 13 -

fact, the website gives no indication that it is not meant for U.S. consumption, or even that it is run by a German company.

Scrutinizer says that we should not consider whether a defendant blocks access to its website -- access-blocking software is imperfect, developing technology. If a defendant tries to limit U.S. users' ability to access its website, however, that is surely relevant to its intent not to serve the United States. The converse is true here: Scrutinizer's failure to implement such restrictions, coupled with its substantial U.S. business, provides an objective measure of its intent to serve customers in the U.S. market and thereby profit. And Scrutinizer's warnings about the inefficacy of access-blocking technology are misplaced based on the record before us. Scrutinizer can track where its customers are from -- it provided state-by-state customer information in response to Plixer's discovery request.

Second, Scrutinizer voluntarily served U.S. customers. Specific personal jurisdiction must be based on a defendant's voluntary contact with the forum; it "may not rest on the 'unilateral activity of another party or a third person.'" Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 208 (1st Cir. 1994) (quoting Burger King, 471 U.S. at 475). Here, Scrutinizer made a globally accessible website and U.S. customers used that website to purchase and pay for Scrutinizer's service. Further, Scrutinizer knew that it was serving U.S. customers and took no

- 14 -

steps to limit its website's reach or block its use by U.S. customers. After three-and-a-half years of knowingly serving U.S. customers, Scrutinizer cannot now claim that its contact with the United States was involuntary. Cf. Walden, 571 U.S. at 286 (noting that the exercise of jurisdiction may be constitutional even though a defendant's forum contacts are "intertwined with his transactions or interactions with the plaintiff or other parties").

Third, Scrutinizer's purposeful U.S. contacts were sufficient to put Scrutinizer on notice that it should expect to be haled into U.S. court. Scrutinizer has "target[ed] the world" by making its website globally accessible. See Nicastro, 564 U.S. at 890 (Breyer, J., concurring). But Scrutinizer says that it could not reasonably anticipate specific jurisdiction because it did not specifically target the United States with its business. We disagree.

Supreme Court precedent does not establish specific targeting of a forum as the only means of showing that the purposeful availment test has been met. The Supreme Court last considered personal jurisdiction over a foreign defendant in Nicastro. The Nicastro plurality would have permitted the exercise of jurisdiction "only where the defendant can be said to have targeted the forum." 564 U.S. at 882. That is the same rule that Scrutinizer urges us to adopt. However, this rule did not command

a majority on the Court and so is not binding here. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.'" Marks v. United States, 430 U.S. 188, 193 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ)). In Nicastro, Justice Breyer held that "resolving [the] case require[d] no more than adhering to [the Supreme Court's] precedents." 564 U.S. at 890 (Breyer, J., concurring). That holding was the narrowest and so controls here. Accord Williams v. Romarm, SA, 756 F.3d 777, 784 (D.C. Cir. 2014) (finding Justice Breyer's concurring opinion controlling under Marks); Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 178 (5th Cir. 2013) (same); AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed. Cir. 2012) (same).

Justice Breyer found no jurisdiction under any of the Court's precedents. There was "no 'regular . . . flow' or 'regular course' of sales," as required by the concurrences in Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987), see id. at 117 (Brennan, J., concurring in part and concurring in judgment); id. at 122 (Stevens, J., concurring in part and concurring in judgment). Nicastro, 564 U.S. at 889 (Breyer, J., concurring). And there was "no 'something more'" that the Asahi

- 16 -

plurality would have required, see Asahi, 480 U.S. at 111-12 (opinion of O'Connor, J.). Nicastro, 564 U.S. at 889 (Breyer, J., concurring). As such, "the plurality's seemingly strict no-jurisdiction rule" was unnecessary. Id. at 890. Justice Breyer also criticized New Jersey's test, which would subject a foreign defendant to jurisdiction so long as it "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." Id. at 891. We need not adopt such a broad rule as the New Jersey court's to uphold the exercise of specific personal jurisdiction over Scrutinizer.

Ultimately, although a close call, we conclude that the German company could have "reasonably anticipated" the exercise of specific personal jurisdiction based on its U.S. contacts. Scrutinizer's "regular flow or regular course of sales" in the United States show that it has purposefully availed itself of the U.S. forum. The record does not reveal what percentage of Scrutinizer's business came from the United States. Nor does the record reveal whether Scrutinizer ever did an online trademark search for the term "Scrutinizer," either before or after it sought U.S. customers.[11] But the record does show that Scrutinizer used

---

[11] Since 2000, the public has been able to search and retrieve for free "the almost millions of pending, registered, abandoned, cancelled or expired trademark registrations" online. 3 McCarthy on Trademarks and Unfair Competition § 19:6 (5th ed.).

its website to obtain U.S. customer contracts.  Those contracts yielded nearly $200,000 in business over three-and-a-half years.  This is not a situation where a defendant merely made a website accessible in the forum.  See, e.g., Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 21 (1st Cir. 2018).  Instead, Scrutinizer's voluntary service of the U.S. market and its not insubstantial income from that market show that it could have "reasonably anticipated" being haled into U.S. court.

This holding accords with Supreme Court precedent.  In Keeton v. Hustler Magazine, the Supreme Court upheld the exercise of jurisdiction because the magazine publisher defendant had "continuously and deliberately exploited the [forum] market."  465 U.S. 770, 781 (1984).  The magazine publisher had a nationwide market -- it had not targeted the forum particularly -- but the court held it should reasonably anticipate suit based on its "substantial number of" sales.  Id.

This conclusion is also consistent with post-Nicastro rulings from around the country.  For instance, the en banc Oregon Supreme Court found a regular course of sales where the defendant sold "over 1,100 CTE battery chargers within Oregon over a two-year period," with in-state sales totaling about $30,000.  Willemsen v. Invacare Corp., 282 P.3d 867, 874, 871 (Or. 2012) (en banc).  This "pattern of sales" made the exercise of personal jurisdiction over the defendant constitutional.  Id. at 877.  In

- 18 -

contrast, a New Jersey federal district court found no regular course of sales when, over about a year, fewer than ten in-state sales brought the defendant "less than $3,383 in revenue." Oticon, Inc. v. Sebotek Hearing Sys., LLC, 865 F. Supp. 2d 501, 514-15 (D. N.J. 2011). "Such scant sales activity" did not "justify the exercise of specific jurisdiction" there. Id. Scrutinizer's U.S. business more resembles the former example than the latter one.

Further, our holding is in accord with those of our sister circuits. The Ninth Circuit upheld the exercise of jurisdiction over a defendant who "continuously and deliberately exploited" the forum market, and who specifically targeted its website at the forum market. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1230 (9th Cir. 2011). The Sixth Circuit upheld the exercise of jurisdiction over a defendant who "regularly [chose] to do business with [forum] residents." Bird v. Parsons, 289 F.3d 865, 875 (6th Cir. 2002). In contrast, the Seventh Circuit found no jurisdiction when the plaintiff pointed to no litigation-related in-forum sales and to no efforts to specifically target the forum. See Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 801, 803 (7th Cir. 2014). And the Fourth Circuit found that a Maryland court had no jurisdiction over a nonprofit defendant who limited its services to Illinois and who accepted, over ten years, less than $1,600 in donations from Marylanders. See Carefirst of Md.,

<u>Inc.</u> v. <u>Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 395, 401 (4th Cir. 2003). We think each of these are consistent with our holding that Scrutinizer is subject to personal jurisdiction.

Finally, we consider Scrutinizer's U.S. trademark application, filed after this litigation began. We have stated that "in most cases, contacts coming into existence after the cause of action arose will not be relevant." <u>Harlow</u>, 432 F.3d at 62. But we made that statement in a suit where the plaintiff alleged medical malpractice. <u>See</u> <u>id.</u> at 53. That discrete-in-time tort is unlike the alleged continuing "tortious" conduct at issue here. Moreover, <u>Harlow</u> based its general rule on the concept of "relatedness," <u>see</u> <u>id.</u> at 62, which Scrutinizer has conceded. Because Scrutinizer's trademark application lies outside <u>Harlow</u>'s rule, we consider the application for whatever impact it has.

The parties have not spoken to why Scrutinizer filed the application, except to suggest that filing may be a precondition for sending a cease and desist letter. We agree with the district court that this contact confirms Scrutinizer's desire to deal with the U.S. market, but does not "tip the scales." <u>Plixer</u>, 293 F. Supp. 3d at 243.

2.   <u>Reasonableness</u>

Though Plixer has satisfied the first two prongs of the analysis, we must still see whether the exercise of jurisdiction here is fair and reasonable. We consider five "gestalt" factors:

> (1) the defendant's burden of appearing [in the forum], (2) the [forum's] interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster, 26 F.3d at 209 (citing Burger King, 471 U.S. at 477). These factors typically "play a larger role in cases . . . where the minimum contacts question is very close." C.W. Downer, 771 F.3d at 69 (quoting Adelson v. Hananel (Adelson I), 510 F.3d 43, 51 (1st Cir. 2007)). The defendant bears the burden of establishing that the exercise of jurisdiction would be unreasonable, Burger King, 471 U.S. at 477, and, although the question is close, Scrutinizer has not shown that it would be unreasonable to assert jurisdiction here.

We consider first the burden on Scrutinizer. That a foreign defendant is involved here is of some weight. Subjecting a defendant to a foreign legal system poses "unique burdens" that carry "significant weight in assessing the reasonableness" of jurisdiction. Asahi, 480 U.S. at 114. We acknowledge this significant burden, but do not find it dispositive. Scrutinizer does substantial and recurrent business in the U.S. As such it "cannot wholly expect to escape the reach of United States courts." Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 12 (1st Cir. 2002). Although this factor points in Scrutinizer's

- 21 -

favor, its weight is somewhat diminished by Scrutinizer's substantial U.S. business.

For further support, Scrutinizer points to the burden of cross-Atlantic travel. But "mounting an out-of-state defense most always means added trouble and cost," BlueTarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 83 (1st Cir. 2013), and modern travel "creates no especially ponderous burden for business travelers," Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). A defendant hoping to show that travel burdens should make the difference must show that those burdens are "special or unusual." BlueTarp, 709 F.3d at 83 (quoting Hannon v. Beard, 524 F.3d 275, 285 (1st Cir. 2008)) (internal quotation marks omitted). Scrutinizer has not done so. As we noted in C.W. Downer, many of the case's logistical challenges "can be resolved through the use of affidavits and video devices." 771 F.3d at 70.

On the second factor, Scrutinizer does not dispute that the United States has an interest in adjudicating a dispute over the application of U.S. trademark law. See, e.g., McBee v. Delica Co., Ltd., 417 F.3d 107, 121 (1st Cir. 2005) (noting the "core purposes of the Lanham Act, which are both to protect the ability of American consumers to avoid confusion and to help assure a trademark's owner that it will reap the financial and reputational rewards associated with having a desirable name or product"). Further, the United States has an interest in remedying an alleged

injury that occurs in the United States.  See Keeton, 465 U.S. at 777.

As to the final three factors, Scrutinizer presents no arguments tending to show that the exercise of jurisdiction would be unreasonable here.  It concedes that Plixer has an interest in obtaining effective relief in a U.S. forum.  And it doubts whether the fourth and fifth factors apply.  Even if the last two factors "weighed against jurisdiction, this alone would be 'insufficient to tip the constitutional balance' on the facts presented here." Adelson v. Hananel (Adelson II), 652 F.3d 75, 84 (1st Cir. 2011) (quoting Adelson I, 510 F.3d at 51).

The gestalt factors do not support Scrutinizer's protests.  "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."  Asahi, 480 U.S. at 114.  Scrutinizer has not shown that the exercise of jurisdiction here would be unreasonable.

*     *     *

Our role is limited to adjudicating the precise issue in front of us.  This appeal raised only one issue: whether the exercise of specific personal jurisdiction over Scrutinizer would violate the Fifth Amendment's Due Process Clause.  We conclude that on the facts here the exercise of jurisdiction would not violate the Due Process Clause.

- 23 -

III.

The judgment of the district court is affirmed.