# United States Court of Appeals
## For the First Circuit

No. 22-1865

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff, Appellee,

v.

RAIMUND GASTAUER,

Relief-Defendant, Appellant,

ROGER KNOX; WINTERCAP S.A.; MICHAEL T. GASTAUER; WB21 US INC.;
SILVERTON SA INC.; C CAPITAL CORP.; WINTERCAP SA INC.;
B2 CAP INC.,

Defendants,

SIMONE GASTAUER FOEHR; B21 LTD.; SHAMAL INTERNATIONAL FZE;
WB21 DMCC,

Relief-Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Howard, and Rikelman,
Circuit Judges.

Alex H. Loomis, with whom William D. Weinreb and Quinn Emanuel
Urquhart & Sullivan, LLP were on brief, for appellant.
Archith Ramkumar, Appellate Counsel, Securities & Exchange
Commission, with whom Megan Barbero, General Counsel, John W.

Avery, Deputy Solicitor, and Theodore J. Weiman, Senior Appellate Counsel were on brief, for appellee.

---

February 9, 2024

---

**KAYATTA**, **Circuit Judge**. Raimund Gastauer ("Gastauer") is a German citizen who resides in Germany. He has never been to Massachusetts. In fact, he has had no contact with the United States since before 2009, when he last visited as a tourist. The United States District Court for the District of Massachusetts nevertheless entered a judgment against Gastauer personally, ordering him to pay just over $3.3 million, plus prejudgment interest, to the United States Securities and Exchange Commission ("SEC"). To justify the exercise of jurisdiction over Gastauer, the district court relied solely on its finding that Gastauer had received that $3.3 million from his son, Michael, who had obtained the money by committing securities fraud in the United States. For the following reasons, we reverse the judgment against Raimund Gastauer.

## I.

The SEC alleges that Michael Gastauer and others facilitated a scheme enabling corporate insiders to sell stock while evading statutory and regulatory registration and disclosure rules. The complaint claims that between December 26, 2017 and February 27, 2018, two of Michael Gastauer's United States-based companies transferred approximately $3.3 million to his father or to accounts held for his father's benefit. That money represented proceeds from Michael Gastauer's illegal scheme, although there is no allegation that Raimund Gastauer knew the money's illicit

- 3 -

provenance when he received it. The SEC nevertheless named Gastauer as a so-called "relief defendant" in the case against his son and petitioned the court for an order of disgorgement against Gastauer under 15 U.S.C. § 78u(d)(5), pursuant to which "the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."

Gastauer moved to dismiss the action against him for lack of personal jurisdiction. He explained that he is a citizen of and resides in Germany, has been to the United States only five times as a tourist and all before 2009, and otherwise lacks any business or other contacts with the United States sufficient for the court to sustain jurisdiction over him. Nor had the SEC alleged that he played any role in his son's fraudulent dealings.

The district court denied the motion in a docket order, citing two non-binding cases without further explanation. Gastauer subsequently filed an answer, in which he again asserted as an affirmative defense the district court's lack of personal jurisdiction over him. After a series of delays, the SEC moved for summary judgment against Gastauer. The motion claimed that the evidence established without dispute that Gastauer had received about $3.3 million from his son. Gastauer opposed the motion by asserting for the first time that he had never received any of his son's ill-gotten gains, based on evidence he had not

previously disclosed in discovery. The district court found that Gastauer could not reasonably contest his liability as to the first $500,000, but that factual disputes remained as to the other $2.8 million. It therefore denied in part the motion for summary judgment. Recognizing, however, that Gastauer's opposition was based on evidence not disclosed to the SEC during discovery, the district court allowed the SEC to take an additional deposition of Gastauer and file a renewed motion for summary judgment as needed.

After a series of negotiations with the SEC regarding the timing and scope of the additional deposition, Gastauer indicated that he did not intend to sit for it because the district court lacked personal jurisdiction over him. The SEC responded with a motion for sanctions against Gastauer under Federal Rule of Civil Procedure 37(d) for failure to comply with his discovery obligations. The district court granted the motion, reiterating that it had personal jurisdiction over Gastauer. It explained for the first time that once it established personal jurisdiction over the son, Michael, as the real defendant-in-interest, that jurisdiction could be imputed to Gastauer to the extent he holds any of the "fraudster's spoils." The court then concluded that given what it called Gastauer's "severe and repetitive" discovery violations, granting summary judgment against him was an appropriate sanction. It thus held Gastauer liable for $3,315,305

in disgorgement (plus interest equaling $604,839). This appeal follows.

## II.

Before reaching the merits of the jurisdiction issue, we consider the SEC's contention on appeal that Gastauer waived his personal jurisdiction defense by opposing the motion for summary judgment without repeating his arguments as to personal jurisdiction.

"[P]ersonal jurisdiction is a personal defense that may be waived or forfeited." Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 144 (2023). A party may forfeit a defense of lack of personal jurisdiction by "express submission, conduct, or failure to assert the defense." Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 25 (1st Cir. 1992). Typically, a defendant "wishing to raise" a problem with personal jurisdiction "must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading." Mitrano v. Jerry's Ford Sales, Inc., 82 F.3d 403, at *1 (1st Cir. 1996) (unpublished table decision) (emphasis omitted) (quoting Glater v. Eli Lilly & Co., 712 F.2d 735, 738 (1st Cir. 1983)).

Gastauer took a belt-and-suspenders approach -- he both filed a motion to dismiss based on lack of personal jurisdiction, and then reasserted the defense in his answer to the SEC's

complaint. As even the SEC agrees, this would normally be enough to raise the "threshold" jurisdictional issue.

The SEC nevertheless contends that Gastauer subsequently forfeited his defense by proceeding to defend the case on substantive grounds. The SEC proffers that Gastauer could have declined to oppose the summary judgment motion on the merits, allowing for the court to enter a default judgment against him, and subsequently collaterally attacked that judgment for lack of personal jurisdiction. By instead actively litigating the substance of the case, argues the SEC, Gastauer created an expectation that he had forfeited his personal jurisdiction defense, which should preclude him from reasserting that defense on appeal.

But "once the issue [of personal jurisdiction] is litigated to resolution in the district court, a defendant's pivot to defending on the merits by itself is an insufficient basis for inferring abandonment." Shatsky v. Palestine Liberation Org., 955 F.3d 1016, 1032 (D.C. Cir. 2020). Any other standard puts defendants between a rock and a hard place, requiring them to either forfeit a defense of their position on the merits, or waive their due process rights.[1]

_____

[1] For this same reason we do not adopt wholesale the standard that "those submissions, appearances and filings that give '[P]laintiff a reasonable expectation that [Defendants] will

- 7 -

The SEC resists this commonsense conclusion by pointing to a statement made in one of this circuit's opinions that "even if the issue of personal jurisdiction is raised in its answer or other responsive pleading," a defendant "may nevertheless waive jurisdiction if it makes voluntary appearances and contests the case at all stages until judgment is rendered." Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 55 (1st Cir. 2010). But nothing in Lechoslaw dictates that a defendant who contests the merits only after first losing a Rule 12(b)(2) motion somehow waives the jurisdictional defense. Indeed, Lechoslaw itself concluded that the trial court did not abuse its discretion in finding that a defendant had preserved a personal jurisdiction defense raised in its answer, despite the fact that it had moved to dismiss for lack of jurisdiction only after propounding discovery requests, negotiating extensions of time for discovery, and moving to expand the scope of a tracking order. Id. at 52, 56.

So too, here, and even more so. Gastauer sought and obtained a ruling on his defense at the very outset of his participation in the case. He then left no doubt as to his position

defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking' . . . result in waiver of a personal jurisdiction defense." Gerber v. Riordan, 649 F.3d 514, 519 (6th Cir. 2011) (alterations in original) (quoting Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010)).

by reasserting the defense in his answer. Further preservation did not require him to abandon the pursuit of other defenses he might have to the claim against him.

The SEC nevertheless says we should find waiver because Gastauer "did not press [his defense] again for three years." Any delay, however, must be considered in light of the entire procedural history of this case. "[T]he passage of time alone is generally not sufficient to indicate forfeiture of a procedural right," and merely "provides the context in which to assess the significance of the defendant's conduct," including "the opportunities to litigate the jurisdictional issue that were foregone." Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999). Gastauer properly and fully litigated the issue of personal jurisdiction, resulting in a ruling that became law of the case, which invited no revisiting absent new law, new facts, or other cause. Indeed, when Gastauer did reassert his position to justify his refusal to be deposed, the district court opined that "Gastauer's insistence that the court lacks personal jurisdiction over him despite its order to the contrary suggests at least willful blindness, if not bad faith." Requiring Gastauer to continue beating that dead horse would incentivize redundancy.

The SEC next contends that the discovery behavior that led to the Rule 37 sanction -- what it repeatedly refers to as Gastauer's "sandbagging" -- should also support a finding that

Gastauer waived his personal jurisdiction defense. The simple answer to this argument is that the district court decided that the appropriate sanction to Gastauer's alleged sandbagging was to grant summary judgment against him and hold him liable for disgorgement of the full amount sought notwithstanding its previous finding that there remained a material dispute as to his receipt of the remaining $2.8 million. We review Rule 37 sanctions for abuse of discretion, see United States v. Toth, 33 F.4th 1, 8 (1st Cir. 2022), and the SEC offers no argument that the district court abused its discretion in failing to craft a sanction that also deemed Gastauer's previously raised and rejected jurisdictional defense waived. Indeed, the SEC did not even request such a sanction from the district court, presumably because the subject of the pertinent discovery had nothing to do with Gastauer's jurisdictional defense.[2] We therefore decline to effectively modify the scope of the Rule 37 order -- which the appellant has not raised on appeal -- to also prevent Gastauer from reasserting his personal jurisdiction defense on appeal.

---

[2] Indeed, it is not clear that such a sanction would even be possible when the litigation misconduct is unrelated to the merits of the jurisdictional issue. See Fuld v. Palestine Liberation Org., 82 F.4th 74, 94 (2d Cir. 2023) (presumption of implied consent to personal jurisdiction was "appropriate only because the defendant's litigation conduct related to whether personal jurisdiction existed").

The SEC alternatively suggests that Gastauer could have filed an interlocutory appeal of the district court's denial of his motion to dismiss. But typically "failure to take an interlocutory appeal does not automatically foreclose review after final judgment." Rivera-Domenech v. Calvesbert L. Offs. PSC, 402 F.3d 246, 249 n.2 (1st Cir. 2005). Moreover, this circuit has made clear that "[a]s a general rule, we do not grant interlocutory appeals from a denial of a motion to dismiss." Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005); see also In re Zofran (Ondansetron) Prods. Liab. Litig., 235 F. Supp. 3d 317, 319-20 (D. Mass. 2017) (declining to certify for interlocutory appeal an order dismissing certain claims for lack of personal jurisdiction). It would be odd to require litigants to make a likely futile gesture to preserve their defenses on appeal.

In sum, we see no basis for finding that Gastauer failed to preserve his objection to the district court's exercise of personal jurisdiction over him.

## III.

We now consider the heart of Gastauer's argument on appeal: that the district court erred in finding that it had personal jurisdiction over him merely because it had jurisdiction over the real defendants-in-interest from whom he had received the wrongfully obtained funds. We review de novo a district court's

- 11 -

exercise of personal jurisdiction over a party to the litigation.[3]
Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 6 (1st Cir. 2018).

In a federal question case such as this one, the Fifth Amendment Due Process Clause requires "the plaintiff to 'show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state.'" Id. at 7 (quoting United States v. Swiss Am. Bank Ltd., 274 F.3d 610, 618 (1st Cir. 2001)). In determining whether such adequate contacts exist, "the federal court's role is the same" as when it "adjudicates state-created rights based on diversity of citizenship jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 n.2 (1st Cir. 2016) (quoting 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1068.1 (4th ed. 2015)).

Due process dictates that a court may only assert its power over an out-of-forum defendant if the party has "such 'contacts' with the forum [] that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (quoting Int'l Shoe Co. v.

---

[3] Our foregoing discussion of the SEC's waiver argument also disposes of the SEC's contention that we should treat this appeal as a challenge to the Rule 37 sanction rather than a challenge to the assertion of personal jurisdiction.

- 12 -

Washington, 326 U.S. 310, 316-17 (1945)).  Traditionally, courts have identified "two kinds of personal jurisdiction" over an out-of-forum defendant -- general and specific.  Id.  General jurisdiction exists where a party has "continuous and systematic contacts with the forum" and subjects the party to a court's power even when the cause of action may not be directly related to those contacts.  Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 79 (1st Cir. 2013).  Specific jurisdiction, by contrast, "covers defendants less intimately connected with a [forum], but only as to a narrower class of claims."  Ford Motor Co., 131 S. Ct. at 1024.  It requires there to be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [] and is therefore subject to the [forum's] regulation."  Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 582 U.S. 255, 262 (2017) (first alteration in original) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).  Any such contacts with the forum must also "represent a purposeful availment of the privilege of conducting activities in that [forum]."  Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 122 (1st Cir. 2022) (quoting Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 59 (1st Cir. 2020)).

Gastauer argues that he is not subject to either type of personal jurisdiction.  He contends that the SEC's failure to demonstrate the existence of minimum contacts between him and the

United States -- let alone that he has "purposefully availed" himself of the protections of the forum -- renders any United States court's exercise of personal jurisdiction over him a violation of due process.

On appeal, the SEC makes no claim that Gastauer has any actual contacts with the United States.[4] Instead, the SEC urges us to "impute" to Gastauer the contacts of his son. Why, one might ask? Because, says the SEC, his son sent him the money, he is joined only for the purpose of retrieving that money (as what the SEC calls a "relief defendant"), and it would be more difficult for the SEC to pursue a claim against Gastauer abroad.

It is very often true that pursuing a defendant in a court that can assert jurisdiction over the defendant poses greater difficulties than would pursuing the defendant in the plaintiff's preferred forum. But that difficulty cannot outweigh the absence of any actual jurisdictional contacts, "no matter how . . . morally compelling the [SEC's] claims." Waldman v. Palestine Liberation Org., 835 F.3d 317, 344 (2d Cir. 2016).

---

[4] While in the proceedings below the SEC argued in the alternative that Gastauer did satisfy the minimum contacts requirement -- by engaging in financial transactions routed through U.S.-based institutions -- the SEC has limited its argument on appeal to the imputation of jurisdictional contacts from the defendant-in-interest. We therefore consider only this latter argument in our analysis.

- 14 -

There are, of course, doctrines that do support the imputation of all sorts of things, including liability itself, between parties with a sufficiently close relationship. See, e.g., Torres-Negron v. Merck & Co., 488 F.3d 34, 40 (1st Cir. 2007) (employer may be liable for an employee's harassing behavior where certain conditions are met); Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 75 (1st Cir. 2002) (nonparty "in active concert or participation with the party specifically enjoined" may "be liable for civil contempt notwithstanding their nonparty status" (citation omitted)); Donatelli v. Nat'l Hockey League, 893 F.2d 459, 469 (1st Cir. 1990) (member's jurisdictional contacts may be attributed to an association where "association exercised substantial influence over the member's decision to carry on the in-forum activities").

The SEC argues that by the same token, once a court has established personal jurisdiction over the defendant-in-interest, those jurisdictional contacts can be imputed to the relief defendant. The SEC cites to only one out-of-circuit decision in support of this novel position, and identifies no persuasive precedent directly stating that a court need not have personal jurisdiction over a relief defendant to hold him liable for monetary disgorgement. See SEC v. Harden, No. 05-CV-354, 2005 WL 2649857, at *3 (W.D. Mich. Oct. 17, 2005) ("[B]oth subject matter jurisdiction . . . and personal jurisdiction over the nominal

- 15 -

party [a]re unnecessary provided that there [i]s subject matter and personal jurisdiction over the real parties and the nominal party held property as a mere custodian for the real parties in interest.").

No matter -- the SEC tells us -- as this circuit has already blessed the imputation of jurisdictional contacts between related parties. It points to our opinion in Rodríguez-Miranda v. Benin, in which we upheld the district court's decision to join the defendant's mother and alter-ego corporations as jointly and severally liable parties in the judgment against the defendant, despite lacking separate personal jurisdiction over the additional parties. 829 F.3d 29 (1st Cir. 2016). We reasoned that "once personal jurisdiction is established over the original party, it 'is retained over Rule 25(c) successors in interest.'" Id. at 45 (quoting Maysonet-Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir. 2003)). We acknowledged that "[w]ere this not so, the owners of the property could merely transfer legal ownership of the assets from one shell corporation to another in a different jurisdiction, putting a party whose initial suit satisfied the jurisdictional requirements to the immense burden of chasing the involved assets from courtroom to courtroom." Id. (quoting Minn. Min. & Mfg. Co. v. Eco Chem, Inc., 757 F.2d 1256, 1263 (Fed. Cir. 1985)).

The SEC argues that the same rationale justifies the exercise of jurisdiction over Gastauer in this case. But the

- 16 -

circumstances in Rodríguez-Miranda differ from the instant case in crucial ways. First, Rodríguez-Miranda arose under Federal Rule of Civil Procedure 25(c), which provides that "[i]f an interest is transferred, [an] action may be continued by or against the original party unless the court, on motion, orders the transferee to be . . . joined with the original party." Id. at 40 (quoting Fed. R. Civ. P. 25(c)). There is no similar motion in this case. Nor could there be, as Rule 25(c) "governs substitution [or joinder] where a party to a lawsuit transfers an interest during the pendency of the lawsuit or after judgment has been rendered." Negrón-Almeda v. Santiago, 579 F.3d 45, 52 (1st Cir. 2009). And here, the funds were transferred to Gastauer well before the SEC brought suit against his son.

More importantly, the Rule 25(c) parties in Rodríguez-Miranda were successors in interest and alter egos of the original defendants over whom the court did have jurisdiction. 829 F.3d at 41. The Rule 25(c) parties "routinely treated" the original defendants' "coffers as their own," and the record suggested that the parties had "engaged in the fraudulent transfer of [their] intellectual property" between each other "for the sole purpose of making [the company] judgment proof." Id. at 44. "Under these extraordinary circumstances," we found that it was not error for the district court to have joined the alter ego entities and exercised jurisdiction over them. Id. at 44-45.

Here, there is no allegation that Gastauer had a similar relationship with any of the defendants-in-interest. The extent of his alleged participation in any wrongdoing is as an after-the-fact recipient of funds that were previously obtained fraudulently. The SEC does not even claim that he knew that the money he was receiving was the fruit of illegal activity. Indeed any accusation that Gastauer was involved in wrongdoing might well render him an unsuitable relief defendant. See SEC v. Ross, 504 F.3d 1130, 1144 (9th Cir. 2007) ("[B]ecause the Receiver's disgorgement claim turns on [the relief defendant's] own violation of the securities laws, the Receiver cannot treat [him] as a nominal defendant . . . .").

This distinction matters. Due process requires that an out-of-state defendant have "certain minimum contacts" with the forum, and that those contacts "represent a purposeful availment of the privilege of conducting activities in that forum." Knox v. MetalForming, Inc., 914 F.3d 685, 690 (1st Cir. 2019). A central purpose of this requirement is to "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 417 (1984)). Instead, as a general rule "[j]urisdiction is proper . . . where the contacts proximately result from actions by

- 18 -

the defendant himself that create a 'substantial connection' with the forum State." Id. (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)); Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

The SEC seeks to avoid the thrust of this precedent by characterizing Gastauer as a sort of successor in interest to his son with respect to the fraudulent funds. But it offers no definition of what constitutes a successor in interest, nor does it provide any explanation as to why Gastauer would meet that definition (other than because he possesses funds that were once possessed by his son).

There are cases in which the jurisdictional contacts of one person or entity are imputed to another deemed to be a "successor-in-interest." See, e.g., Minn. Min. & Mfg. Co., 757 F.2d at 1263. But the successor in interest in such cases is a party that has quite entirely stepped into its predecessor's shoes, such as by a corporate merger. Id.; see U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., 916 F.3d 143, 156 (2d Cir. 2019) (finding that "[b]ecause a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed corporation . . . we see no reason to doubt that . . . the surviving entity, would be subject to jurisdiction" in the same

way as would its predecessor); SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co., 578 F. Supp. 3d 511, 537-58 (S.D.N.Y. 2022) (declining to exercise jurisdiction under a successor-jurisdiction theory where there was no "continuity of ownership" between entities and therefore "the rationales for successor jurisdiction . . . d[id] not apply"). The SEC cites no authority for the proposition that the mere receipt of money from another person brings with it the personal jurisdictional attributes of that person. Indeed, the authority runs to the contrary. See U.S. Bank Nat'l Ass'n, 916 F.3d at 156 ("The fair inference of the precedents is that . . . successor liability based on acquisition of a predecessor's assets does not necessarily make the defendant also amenable to jurisdiction . . . .").

Ultimately, the issue is not the legal form of the relationship between Gastauer and his son. Rather, it is the substantive incompatibility between the SEC's position and our well-established understanding that due process prohibits the imputation of contacts to a relief defendant like Gastauer, whose only involvement in the case is his receipt of a unilateral transfer of money from a third party. Haling him into court on the basis of that involvement alone would accomplish exactly what

due process prohibits.[5]  See also SEC v. Montle, 65 F. App'x 749,752 (2d Cir. 2003) (the government must "show that the relief defendants have 'minimum contacts' with the United States, and that the assertion of jurisdiction . . . comports with the traditional notions of fair play and justice").

The SEC next theorizes that because Gastauer is brought into the litigation merely "as a means of facilitating collection," and is himself not liable for any wrongdoing, then the jurisdictional requirements are somehow lesser.  SEC v. Cherif, 933 F.2d 403, 414 (7th Cir. 1991).  A prototypical relief defendant, the argument goes, "is a person who 'holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute.'"  SEC v. Colello, 139 F.3d 674, 676 (9th Cir. 1998) (quoting Cherif, 933 F.2d at 414)); see also SEC v. Sanchez-Diaz, 88 F.4th 81, 87-88 (1st Cir. 2023) (defining

---

[5]  The SEC also appears to gesture towards the doctrine of fraudulent transfers, which allows a trustee to "avoid any transfer . . . of an interest of the debtor . . . incurred by the debtor" made within two years of the date of the filing of a bankruptcy petition if the transfer was not made for "reasonably equivalent value."  In re Palladino, 942 F.3d 55, 58-59 (1st Cir. 2019) (quoting 11 U.S.C. § 548(a)(1)(B)(i)).  We understand the argument to be that a court should also be able to "undo" a transfer of money to a relief defendant not made for reasonably equivalent value, as in this case.  But the SEC fails to demonstrate why the specific power granted to a trustee by statute in the bankruptcy context should translate to a securities enforcement action.  Nor, critically, does the SEC argue that characterizing the $3.3 million as a fraudulent transfer allows us to circumvent Gastauer's constitutionally protected due process rights.

a relief defendant as a person who: "(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds" (citation omitted)).  A relief defendant is not accused of any wrongdoing and "is part of a suit only as the holder of assets that must be recovered in order to afford complete relief." CFTC v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 192 (4th Cir. 2002). And because a nominal defendant "has no interest in the subject matter litigated . . . there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction over the defendant is established."[6] Cherif, 933 F.2d at 414; SEC v. World Cap. Mkt., Inc., 864 F.3d 996, 1004 (9th Cir. 2017) ("[A] relief defendant . . . 'can be joined to aid the recovery of relief without the assertion of subject matter jurisdiction' because he or she 'has no ownership interest in the property which is the subject of litigation.'" (quoting Cherif, 933 F.2d at 414)); Janvey v. Adams, 588 F.3d 831, 834 (5th Cir. 2009) (same); SEC v. George, 426 F.3d 786, 800 (6th Cir. 2005) (same).

---

[6] Gastauer disagrees that a court need not establish subject-matter jurisdiction over claims against a relief defendant, but theorizes in the alternative that district courts have subject-matter jurisdiction over claims against relief defendants under the Securities Exchange Act, 15 U.S.C. § 78aa.  Because both parties agree that the district court had proper subject-matter jurisdiction over the claim against Gastauer, though they disagree as to why, we need not resolve that question today.

But none of these cases say anything about personal jurisdiction over a relief defendant. Indeed it defies common sense to think that the district court, in imposing a multi-million dollar judgment against Gastauer personally, is doing anything but exercising coercive power over him, and challenging his right to property in his hands. And "[i]t is common ground that, for a court to render a binding decision consonant with due process, it must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999) (citing Burnham v. Superior Ct. of Cal., 495 U.S. 604, 608-09 (1990)). Thus, that the SEC has not accused Gastauer of any legal wrongdoing does nothing to diminish the constitutional protections he is owed before a court may order him to participate in a proceeding challenging his property interests.

Gastauer's status as a foreign resident who lacks any relevant contacts with the entire United States further cautions against the SEC's expansive view of the district court's jurisdiction. An "uninhibited approach to personal jurisdiction" in a case such as this would pose "risks to international comity." Daimler AG v. Bauman, 571 U.S. 117, 141 (2014) (detailing concerns). And even were we to affirm the district court's judgment against Gastauer, the SEC would still have to enforce the order in a foreign tribunal before it could realize any portion of

the judgment.  While the SEC assures us that it is able to address any issues of enforcement, such "[c]onsiderations of international rapport thus reinforce our determination" that exercising in personam jurisdiction over Gastauer "would not accord with the 'fair play and substantial justice' due process demands."  Id. at 142 (quoting Int'l Shoe Co., 326 U.S. at 316).

We understand the SEC's motivating concern that our ruling today may in some instances make it more difficult to recoup the spoils of a crime.  But to the extent that is true, it cannot overcome Gastauer's fundamental "right to be subject only to lawful power."  J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 884 (2011) (plurality opinion) (citing Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).

**IV.**

We therefore decline to adopt the SEC's novel theory regarding the imputation of jurisdictional contacts to Gastauer in this case.  The district court's exercise of personal jurisdiction over appellant is accordingly reversed and the case is remanded to the district court for further proceedings consistent with this opinion.