# United States Court of Appeals
## For the First Circuit

No. 19-1382

KUAN CHEN,

Plaintiff, Appellant,

v.

UNITED STATES SPORTS ACADEMY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Kayatta, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Stanley D. Helinski, with whom Helinski Law Offices was on brief, for appellant.
Bethany P. Minich, with whom Litchfield Cavo LLP was on brief, for appellee.

April 15, 2020

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation

**SELYA**, **Circuit Judge**.  The appeal in this case requires us to explore the frontiers of personal jurisdiction in the internet age.  This expedition leads us to conclude — as did the district court — that personal jurisdiction cannot constitutionally be exercised over the defendant in Massachusetts. Accordingly, we affirm the dismissal of the complaint for want of jurisdiction.

## I. BACKGROUND

When "[f]aced with a motion to dismiss for lack of personal jurisdiction, a district court may choose from among several methods for determining whether the plaintiff has met [his] burden."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (internal quotation omitted) (quoting Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007)). This choice is informed chiefly by the state of the record, the extent to which the merits of the underlying claim are intertwined with the jurisdictional issue, and the district court's assessment of whether it would be "unfair to force an out-of-state defendant to incur the expense and burden of a trial" without first requiring a substantial showing of the facts necessary to establish jurisdiction.  Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-46 (1st Cir. 1995) (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 676 (1st Cir. 1992)).

Under the prima facie approach — typically used at the early stages of a case — "the district court acts not as a factfinder, but as a data collector," id. at 145, asking only whether the plaintiff has proffered facts that, if credited, would support all findings "essential to personal jurisdiction," id. (quoting Boit, 967 F.2d at 675). If the court determines that it would be unfair to the defendant to proceed with the litigation without first requiring the plaintiff to make more than a prima facie showing of jurisdiction, the preponderance-of-the-evidence approach comes into play. See id. at 145-46. Under that approach, the district court holds "a full-blown evidentiary hearing at which the court will adjudicate the jurisdictional issue definitively before the case reaches trial" using a preponderance-of-the-evidence standard. Id. at 146.

If "the assertion of jurisdiction is bound up with the claim on the merits, the possibility of preclusion [may] render[] use of the preponderance standard troubling." Id. Where such "special circumstance[s]" obtain, the district court's fallback position typically involves an application of the "likelihood" standard. Id. Under this approach, the district court holds an evidentiary hearing and makes findings limited to "whether the plaintiff has shown a likelihood of the existence of each fact necessary to support personal jurisdiction," leaving for trial the definitive resolution of factual controversies common to both the

- 3 -

merits of the underlying claim and the jurisdictional dispute. Id. (quoting Boit, 967 F.2d at 677). "[B]y engaging in some differential factfinding, limited to probable outcomes as opposed to definitive findings of fact," the district court can sidestep thorny preclusionary quandaries. Id.

With this paradigm in place, we proceed to the relevant facts and travel of the case. Here, the district court decided the defendant's motion to dismiss for want of personal jurisdiction at the inception of the case and without holding an evidentiary hearing. See Cheng v. U.S. Sports Acad., Inc., No. 18-12533-FDS, 2019 WL 1207863, at *4 (D. Mass. Mar. 14, 2019).[1] Thus, the requirements of the prima facie approach control. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Consistent with that approach, we draw the relevant facts "from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Baskin-Robbins, 825 F.3d at 34. Similarly, we "take into account undisputed facts put forth by the defendant." Id.

---

[1] Due to a scrivener's error, the plaintiff's name appeared as "Cheng" throughout most of the district court proceedings. Shortly after the plaintiff filed his notice of appeal, the district court granted a motion to correct the plaintiff's surname on the district court docket to "Chen." We use the corrected nomenclature throughout this opinion.

- 4 -

Defendant-appellee United States Sports Academy, Inc. (USSA) is an educational institution incorporated in Alabama, which has its principal place of business there. USSA is involved mainly in online education, and it is accredited to award bachelor's, master's, and doctoral degrees. USSA's Distance Learning Program allows students to complete their coursework "without leaving their homes or jobs" through an online learning platform accessible twenty-four hours a day in all fifty states.

In 2008, plaintiff-appellant Kuan Chen enrolled in USSA's doctoral program in sports management. At the time of Chen's matriculation, USSA required him to complete all degree requirements within ten years and to pass a comprehensive examination. Between 2008 and 2010, Chen finished forty-two credits of coursework. Chen resided in Alabama during this period, with the exception of one term in Missouri and time spent in an experiential "mentorship" program in New York.

In 2009, USSA gave Chen the option of switching his "degree requirement" from the passage of a comprehensive examination to the completion of a portfolio. Chen accepted USSA's offer. He was subsequently assigned a portfolio advisor and began working on his portfolio in 2010. Chen alleges that he "nearly complete[d]" his portfolio (except for the submission of a few papers) and finished all other requirements for his doctoral degree except his dissertation.

At some point in or after 2010, Chen moved to Massachusetts and took a hiatus from his doctoral program to pursue a master's degree in acupuncture.[2]  Chen does not claim that USSA had any involvement with that degree.

Cognizant that he had only ten years in which to complete his doctoral degree, Chen sought to resume work on his portfolio in 2016 (while apparently still living in Massachusetts).  But upon attempting to access his coursework online, Chen discovered that he was locked out and unable to log on to his account.  When he contacted USSA, he was informed that he had been "removed from enrollment" and would need to reenroll in order to resume his studies.

Chen submitted an application for reenrollment.  In February of 2016, he received an e-mail from USSA acknowledging

---

[2] The origins of Chen's residence in Massachusetts are tenebrous.  Chen alleged in his complaint (filed in 2018) that he was a resident of Massachusetts and that he had pursued a master's degree in acupuncture there at some point in or after 2010.  In briefing, he asserts that he resided in Massachusetts and completed coursework for his doctoral degree on USSA's online learning platform "[a]t all relevant times" but leaves this phrase undefined.  Beyond these allegations, the record contains no information about when he moved to Massachusetts.  Because Chen has failed to furnish any facts that contradict USSA's declaration (in a sworn affidavit) that Chen resided in Alabama from 2008 to 2010, we deem that fact undisputed and assume that Chen moved to Massachusetts at some subsequent time.  See Baskin-Robbins, 825 F.3d at 34 (explaining that courts employing prima facie approach may consider defendant's undisputed factual proffers); see also Foster-Miller, 46 F.3d at 145 (confirming that plaintiff must "adduce evidence of specific facts" showing personal jurisdiction exists).

receipt of his application and advising him that he would have to take a comprehensive examination if his application was accepted. Chen protested that he had switched to the portfolio degree requirement, and the USSA employee with whom he was corresponding told him that she would "look into the issue." Later that month, USSA accepted Chen's reenrollment application, and an admissions counselor confirmed that Chen would only need to complete the portfolio degree requirement.

In May of 2017, Chen again found himself unable to access his online account. After some investigation, he learned that his portfolio had been deleted. The following month, USSA's dean of academic affairs informed Chen that, notwithstanding USSA's previous representations to the contrary, he would be required to pass a comprehensive examination in order to complete his degree. Chen alleges that USSA's actions deprived him of the opportunity to earn his degree "without starting from scratch," resulting in wasted tuition dollars and "the loss of income associated with a degree."

Aggrieved by his treatment, Chen sued USSA in a Massachusetts state court, alleging breach of contract, unfair and deceptive business practices, unjust enrichment, and fraudulent inducement. Citing the existence of diversity jurisdiction, USSA removed the case to the federal district court. See 28 U.S.C. §§ 1332(a), 1441(b). It then moved to dismiss the complaint for

- 7 -

want of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). In a thoughtful rescript, the district court concluded that USSA's general business contacts with Massachusetts did not render USSA "essentially at home" in the Commonwealth such that general jurisdiction could be exercised over USSA there. Cheng, 2019 WL 1207863, at *5 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). The court likewise concluded that Chen's "enrollment in the distance-learning program while in Alabama, followed by a unilateral move to Massachusetts," did not provide a sufficient basis for the exercise of specific jurisdiction. Id. at *8. This timely appeal ensued.

## II. ANALYSIS

We divide our analysis into four parts. First, we sketch the contours of the personal jurisdiction inquiry under the prima facie approach. Second, we address Chen's contention that the district court should not have considered an affidavit attached to USSA's motion to dismiss. We then examine, in sequence, whether USSA's contacts with Massachusetts permit the exercise of either general or specific jurisdiction.

### A. The Contours of the Inquiry.

The burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff. See Baskin-Robbins, 825 F.3d at 34. "Where, as here, a district court dismisses a case for lack of personal jurisdiction based on

- 8 -

the prima facie record, rather than after an evidentiary hearing or factual findings, our review is de novo."  Id. (quoting C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)).  In undertaking this tamisage, we are not married to the district court's reasoning but, rather, may uphold the judgment on any ground made manifest by the record.  See id.

Under the prima facie approach, an inquiring court must ask whether the plaintiff has "proffer[ed] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."  Id.  To make such a showing, the plaintiff cannot rely solely on conclusory averments but must "adduce evidence of specific facts."  Foster-Miller, 46 F.3d at 145.  When deciding a motion to dismiss using the prima facie approach, the court must accept the plaintiff's properly documented evidentiary proffers as true and give "credence to the plaintiff's version of genuinely contested facts."  Baskin-Robbins, 825 F.3d at 34.  At the same time, the court must consider undisputed facts proffered by the defendant that bear on jurisdiction.  See id.

This case comes to the federal courts through the medium of diversity jurisdiction.  See 28 U.S.C. § 1332(a).  When assessing whether personal jurisdiction exists with respect to a non-resident defendant, a federal court exercising diversity jurisdiction acts as the "functional equivalent of a state court sitting in the forum state."  Baskin-Robbins, 825 F.3d at 34

- 9 -

(quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). Therefore, Chen must show that the exercise of personal jurisdiction over USSA in Massachusetts would satisfy not only the strictures of the Due Process Clause but also the strictures of the Massachusetts long-arm statute, see Mass. Gen. Laws ch. 223A, § 3. Although the reach of the Massachusetts long-arm statute may not be entirely congruent with the reach of the Due Process Clause, see Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), we need not parse any such distinctions here. Neither party has advanced any argument specific to the Massachusetts long-arm statute and, thus, any claim that the long-arm statute is less elastic than the Due Process Clause has been waived. See id. As a result, we train the lens of our inquiry exclusively on the federal constitutional analysis.

The Due Process Clause dictates that, as a prerequisite to the exercise of personal jurisdiction, an out-of-state defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). This benchmark "is flexible and fact-specific, 'written more in shades of grey than in black and white.'" Baskin-Robbins, 825 F.3d at 35 (quoting Phillips

- 10 -

Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)).

As long as due process concerns are satisfied, a federal court "may exercise either general or specific jurisdiction over a defendant." Id. We outline here only the basic distinction between these two forms of personal jurisdiction, reserving a fuller elaboration for later discussion. See infra Parts II(C)-(D). When a defendant corporation's general business contacts with the forum, even if unrelated to the litigation at hand, are "'so "continuous and systematic" as to render [the defendant] essentially at home in the forum State,' that state holds general jurisdiction over the defendant as to all claims." Copia, 812 F.3d at 4 (quoting Goodyear, 564 U.S. at 919). In contrast, "[s]pecific jurisdiction allows a court to hear a particular case as long as 'that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum.'" Baskin-Robbins, 825 F.3d at 35 (quoting Phillips Exeter, 196 F.3d at 288).[3]

---

[3] Chen frequently alludes to the "sliding scale" analysis that some courts use to evaluate whether a defendant's online contacts with the forum state permit the exercise of personal jurisdiction. See Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 36 n.5 (1st Cir. 2010) (describing "sliding scale" analysis as articulated in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). This court has never embraced that sliding scale analysis, and we have no occasion to consider the matter today. We note, though, that we previously have indicated that the sliding scale analysis — which was developed in a case involving specific

## B.  The Rosandich Affidavit.

Against this backdrop, we turn to the particulars of the case at hand.  In moving to dismiss the complaint, USSA attached to its motion an affidavit executed by its president, Thomas J. Rosandich.  The affidavit contained a plethora of facts bearing on the jurisdictional inquiry.

To begin, Rosandich made clear that USSA is both incorporated and headquartered in Alabama; that it does not have any physical presence (say, an office, a registered agent, or even a telephone number) in Massachusetts; and that it does not pay taxes there.  According to the school's records, "between 2008 and 2010, [Chen] completed his courses in residence in Alabama," except for the term he spent in Missouri and his "mentorship" stint in New York.  Moreover, as of the date of the affidavit (January 10, 2019), USSA had only two enrolled students who were physically present in Massachusetts.[4]

Chen did not dispute the contents of Rosandich's affidavit either with a dueling affidavit or with any other evidentiary proffer.  Not surprisingly, then, the district court

___

jurisdiction — is ill-suited for the general jurisdiction inquiry. See id.  And where, as here, purposeful availment is plainly lacking, see infra Part II(D), the sliding scale adds nothing of consequence to the specific jurisdiction analysis.

[4] Neither of these students was enrolled in a program leading to a degree.  Instead, each of them was taking only a single online course.

relied on the affidavit in adjudicating the motion to dismiss. See Cheng, 2019 WL 1207863, at *2-3. Chen strives to convince us that this reliance was misplaced. We are not persuaded.

Chen's fundamental premise is that the affidavit is a document extraneous to the complaint and, thus, "should not have been relied upon" in evaluating the motion to dismiss. This premise is flawed. USSA moved to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2). It is clear beyond hope of contradiction that a district court confronted with a motion to dismiss under that rule must, when employing the prima facie approach, look beyond the pleadings to examine not only the plaintiff's properly documented evidentiary proffers but also the defendant's undisputed jurisdictional facts. See PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 16-17 (1st Cir. 2019); Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). Such jurisdictional facts may be adduced by means of an affidavit made by a person who — like Rosandich — has adequate knowledge of the situation. See Baskin-Robbins, 825 F.3d at 34; Sawtelle, 70 F.3d at 1385.

Next, Chen argues that the district court should not have taken the affidavit into account because its contents were disputed. But for this purpose, facts are not deemed disputed merely because defense counsel, in an unsworn brief or in argument before a court, challenges them. See Mass. Sch. of Law at Andover,

Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (observing that "despite the liberality" of prima facie approach, courts are not required "struthiously to 'credit conclusory allegations'" (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994))); cf. Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001) (observing that "statements contained in a memorandum or lawyer's brief" are "manifestly insufficient to create genuine issues of material fact"). Here, the record reveals that Chen failed to offer any evidence to counter the contents of the Rosandich affidavit. Indeed, his memorandum in opposition to USSA's motion to dismiss did not even mention the affidavit. Under these circumstances, the district court had every right to treat the factual assertions embedded in the affidavit as undisputed and to rely on those facts when resolving the motion to dismiss.

Chen has another arrow in his quiver. He argues that the affidavit's validity was "unchecked" inasmuch as the parties "had not yet commenced discovery." This arrow, too, flies wide of the mark. Chen had ample opportunity to move for jurisdictional discovery but failed to do so. A party who chooses not to avail himself of an opportunity for discovery can scarcely be heard to complain when the lack of such discovery thereafter redounds to his detriment. See Mass. Sch. of Law, 142 F.3d at 37 (rejecting claim based on lack of jurisdictional discovery because plaintiff never requested discovery); cf. Jones v. Secord, 684 F.3d 1, 6

(1st Cir. 2012) ("[C]ourts, like the deity, tend to help those who help themselves . . . .").

To cinch the matter, Chen never moved to strike the Rosandich affidavit. Nor did he object to the district court's consideration of the affidavit in his opposition to USSA's motion to dismiss. These omissions are fatal to his belated attempt to challenge the affidavit on appeal. "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). There is nothing out of the ordinary about the circumstances here.

To say more about the Rosandich affidavit would be to paint the lily. We hold, without serious question, that the Rosandich affidavit formed an appropriate part of the district court's decisional calculus.

### C. General Jurisdiction.

This brings us to the question of whether USSA's contacts with Massachusetts are sufficient to warrant the exercise of general jurisdiction over it. We have sometimes framed the general jurisdiction inquiry as comprising three distinct requirements: first, that the defendant's general business contacts with the forum state, unrelated to the suit at hand, be continuous and

- 15 -

systematic; second, that those contacts represent the defendant's purposeful availment of the privilege of conducting business in the forum; and third, that the exercise of general jurisdiction over the defendant be reasonable. See, e.g., Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 32-33 (1st Cir. 2010).

In recent years, the Supreme Court has refined this inquiry, emphasizing that the focus of the general jurisdiction analysis is not merely whether an out-of-forum corporation's "in-forum contacts can be said to be in some sense 'continuous and systematic.'" Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014) (quoting Goodyear, 564 U.S. at 919). Instead, the lodestar of the inquiry is whether the corporation's general business contacts with the forum are sufficiently continuous and systematic "as to render [it] essentially at home in the forum State." Id. (alteration in original) (quoting Goodyear, 564 U.S. at 919).

The paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of business. See BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017). In "exceptional case[s]," though, a defendant corporation's general business operations in a state in which it is neither incorporated nor headquartered "may be so substantial and of such a nature as to render the corporation at home in that State." Daimler, 134 S. Ct. at 761 n.19. The Court has singled

out Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952), as an avatar of such an exceptional case. See BNSF Ry., 137 S. Ct. at 1558; Daimler, 134 S. Ct. at 755-56, 761 n.19. There, the Court concluded that general jurisdiction could be exercised over a defendant corporation in the forum because "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to [the forum]," which thereafter functioned as the nerve center of the corporation's wartime operations. BNSF Ry., 137 S. Ct. at 1558.

In this case, it is evident that USSA is not, in the paradigmatic sense, at home in Massachusetts. After all, it is undisputed that USSA is incorporated in Alabama and has its principal place of business there. By the same token, this is not the exceptional case in which USSA's general business operations in Massachusetts are so unusually substantial that USSA can fairly be described as at home there.

We do not discount the possibility that a corporation's pervasive virtual presence in a forum may be the linchpin for a finding that its business contacts are so continuous and systematic as to render it at home in the forum — especially since a corporation, like an individual, may have a number of homes. But the mere whiff of a virtual presence will not suffice. Here, it is true that USSA maintains an informational website, accessible in Massachusetts, that advertises USSA's educational offerings to

- 17 -

prospective students.[5]  It is equally true that USSA has an interactive online learning platform that is accessible in Massachusetts and that two Massachusetts-based students were enrolled in a single USSA online course as of January 2019.[6]  But nothing in the record would support a finding that these contacts with Massachusetts, whether viewed singly or in the aggregate, constitute a pattern of general business operations so unusually substantial as to render USSA "essentially at home" in the Commonwealth.  Id. (quoting Daimler, 134 S. Ct. at 754).

In an attempt to change the trajectory of the debate, Chen contends that USSA "affects the Massachusetts economy by drawing students away from Massachusetts educational

---

[5] Our description of USSA's website as "informational" tracks the focus of Chen's evidentiary proffer, which consists of images of webpages recounting USSA's history, mission, and Distance Learning Program.  It seems highly probable that this website has at least some interactive features.  For instance, one of the webpages Chen provides references USSA's "[o]nline writing tutorials" and "extensive online reference database system."  And it appears that individuals viewing the website can send messages to USSA through it.  The website also appears to include links to a "Central Login" and to "Free Courses."  Be that as it may, Chen presents no argument about the significance of these features, stating only that his evidentiary proffer shows that USSA "advertises that a student is able to conduct all of his or her studying, online, from his or her home state."

[6] It is possible (and perhaps likely) that students may be able to access the online learning platform by way of USSA's website.  The record, though, sheds no light on the degree of interconnection between these two components of USSA's online presence.  Preferring to err (if at all) on the side of caution, we assess each component as a separate data point.

- 18 -

institutions." Relatedly, he asserts that Massachusetts licensing authorities recognize USSA degrees. But Chen offers nothing in the way of proof, apart from his own bare statements, to support these charges.[7] See Sawtelle, 70 F.3d at 1386 (observing that courts undertaking prima facie approach "do not credit conclusory allegations" (quoting Ticketmaster-N.Y., 26 F.3d at 203)). And even if substantiated, Chen's averments would still be inadequate to show that USSA's general business operations are so anchored in the Massachusetts economy that USSA can be "fairly regarded as at home" there. Goodyear, 564 U.S. at 924.

Finally — even though evidence of such contacts would not, on this record, alter our decisional calculus — it bears mentioning that USSA lacks certain basic links with Massachusetts. For instance, USSA maintains no physical presence in the Commonwealth and pays no taxes there. Nor is there any evidence in the record that USSA recruits Massachusetts-based students through participation in career fairs, television media, pinpointed print advertising, or the like. To echo the district court's words, USSA's generalized contacts with Massachusetts appear "sporadic, at best." Cheng, 2019 WL 1207863, at *5.

---

[7] The record contains no facts, for instance, identifying Massachusetts schools that allegedly compete with USSA, let alone any facts relating to the diversion of educational dollars from such schools to USSA's coffers.

That ends this aspect of the matter. Massachusetts is neither USSA's state of incorporation nor its principal place of business. And it is nose-on-the-face plain that USSA's general business operations are not sufficiently entrenched in Massachusetts as to render USSA at home there. Consequently, the district court appropriately determined that general jurisdiction may not constitutionally be exercised over USSA in Massachusetts.

## D. **Specific Jurisdiction.**

The last leg of our journey traverses the question of whether, for purposes of Chen's case, specific jurisdiction over USSA lies in Massachusetts. The Due Process Clause imposes three requirements for exercising specific jurisdiction over out-of-forum defendants. First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum. See Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018). Second, the defendant's forum-state contacts must "represent a purposeful availment of the privilege of conducting activities in that state." Id. Third, the exercise of specific jurisdiction in the forum must be reasonable under the circumstances. See id. "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." Id.

The basis on which Chen contends that USSA is subject to jurisdiction in Massachusetts with respect to his claims is by now

familiar: USSA solicits Massachusetts-based students online through its informational website and maintains an interactive online learning platform, accessible in Massachusetts, for the purpose of facilitating students' coursework (including, he alleges, his own). He also gestures to two other hooks on which a finding of specific jurisdiction might potentially be hung. These involve USSA's receipt of tuition that Chen allegedly paid from Massachusetts and the "continuous email communications" that purportedly occurred between the parties while Chen was in Massachusetts. Our analysis of these contacts centers on the purposeful availment prong of the specific jurisdiction inquiry, and so we start with a brief primer on that element.

"[W]e have explained that 'the two cornerstones of purposeful availment' are 'voluntariness' and 'foreseeability.'" PREP Tours, 913 F.3d at 19-20 (quoting Ticketmaster-N.Y. 26 F.3d at 207). Achieving voluntariness demands that the defendant's contacts with the forum result proximately from its own actions. See id. at 20; Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008). And to clear the foreseeability hurdle, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Given these criteria, a finding of purposeful availment

- 21 -

necessarily requires more than the unilateral activities of third parties. See Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 9 (1st Cir. 2018); see also PREP Tours, 913 F.3d at 20 ("[A] plaintiff's 'unilateral activity' cannot establish the requisite connection between the defendants and the forum jurisdiction." (quoting Burger King, 471 U.S. at 474-75)).

Importantly, evidence of "specific targeting of a forum" is not "the only means of showing that the purposeful availment test has been met." Plixer, 905 F.3d at 9. Under appropriate circumstances, a defendant corporation's "'regular course of sale[s] in the [forum]' could make the exercise of jurisdiction foreseeable to the defendant." Knox v. MetalForming, Inc., 914 F.3d 685, 691 (1st Cir. 2019) (second alteration in original) (internal quotation marks omitted) (quoting Plixer, 905 F.3d at 10). And on the right factual record, jurisdiction might be predicated on a showing of "plus" factors evincing a corporate defendant's deliberate attempt to serve the forum state, that is, factors indicating something over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce. See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 111-12 (1987) (plurality opinion); Knox, 914 F.3d at 691-92.

Having laid this foundation, we begin our journey with an assessment of Chen's sweeping contention that USSA is "subject

to jurisdiction in Massachusetts and everywhere else where it solicits online students" through its informational website and facilitates students' coursework through its interactive online learning platform. With respect to USSA's informational website, Chen's argument is plainly foreclosed by precedent. We have made pellucid that "the mere availability" of a defendant's primarily informational website in a forum is insufficient, without more, to subject a defendant to jurisdiction there. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016). Otherwise, the universality of websites in the modern world would overwhelm constitutional limitations on the exercise of personal jurisdiction. See Cossaboon, 600 F.3d at 35.

There is, moreover, no evidence in the record that USSA either aims its informational website specifically at prospective students in Massachusetts or derives significant revenue from Massachusetts-based individuals through its maintenance of this website. Similarly, the record is barren of evidence that USSA solicited either Chen's enrollment or his reenrollment through this website while Chen was in Massachusetts. Accordingly, we conclude, without serious difficulty, that USSA cannot constitutionally be subjected to specific jurisdiction in Massachusetts simply because it operates a primarily informational website that happens to be available there.

USSA's maintenance of an interactive online learning platform in Massachusetts — on which Chen allegedly completed coursework and attempted to resume work on his portfolio — presents a closer question. We have upheld the exercise of specific jurisdiction over a foreign corporation in the United States when the corporation used its interactive website to sell its services to customers in the United States and the corporation was aware that it had derived substantial revenue from those sales over the course of several years. See Plixer, 905 F.3d at 9-10. This case, however, presents the novel question of whether a finding of purposeful availment sufficient to warrant the exercise of specific jurisdiction can be sustained on the basis of a defendant's maintenance of a highly interactive website available in the forum and allegedly accessed by the plaintiff there, even though no accompanying evidence shows that the website either specifically targets the forum or has resulted in the defendant's knowing receipt of substantial revenue from forum residents.

On this record, that question must be answered in the negative: we conclude that USSA cannot be subjected to specific jurisdiction in Massachusetts based on its maintenance of an online learning platform accessible in (and allegedly accessed by Chen from) the Commonwealth. As a general matter, USSA perhaps could have anticipated that Massachusetts residents (like residents of any other state) might enroll in its Distance Learning Program and

- 24 -

access its online learning platform from the Commonwealth. But this broad and generic degree of foreseeability is insufficient, standing alone, to rise to the level of purposeful availment with respect to Chen's claims. See Kloth v. S. Christian Univ., 320 F. App'x 113, 116 (3d Cir. 2008) (per curiam); see also Plixer, 905 F.3d at 10 (distinguishing "a situation where a defendant merely [makes] a website accessible in the forum" from substantial and "voluntary service" of forum market in purposeful availment inquiry). When all is said and done, Chen has failed to show that USSA deliberately used its online learning platform (or any other component of its online presence) to target him while he was in Massachusetts. Nor is there any evidence that USSA's maintenance of an online learning platform resulted in its knowing receipt of significant tuition dollars from Chen while he was billeted in Massachusetts. Therefore, we cannot say that USSA purposefully availed itself of the privilege of conducting business in Massachusetts simply by virtue of maintaining an interactive online learning platform accessible in Massachusetts and all other states.

We are aware, of course, that two Massachusetts-based students were enrolled in a single online course through USSA as of January 2019. Although Chen's discrete claims do not concern USSA's contacts with either or both of these students, such contacts might nonetheless prove relevant to a holistic assessment

of whether USSA has purposefully availed itself of the privilege of doing business in Massachusetts. The record, though, is utterly devoid of evidence sufficient to ground either a finding that USSA used its online presence to target these two students while they were in Massachusetts or a finding that USSA derived substantial revenue from them. For instance, the record does not reveal how these students' enrollments came about, the duration of their studies, whether they ever conducted their studies from states other than Massachusetts, or the amounts of tuition they paid. The raw fact of USSA's awareness of two Massachusetts-based students — neither of whom was seeking a degree — is insufficient to show that USSA purposefully availed itself of the benefit of doing business in Massachusetts such that it reasonably could have expected to face suit there by Chen. See Kloth, 320 F. App'x at 116 (finding no purposeful availment absent any evidence that "school engaged in business with any one in [the forum] other than [the plaintiff] and one other student").

The sockdolager is that all of USSA's alleged case-specific contacts with Massachusetts — apart from its general maintenance of a website and online learning platform accessible in all fifty states — stem from Chen's unilateral activity. Although Chen indicates that he took various actions while he was in Massachusetts (including coursework, tuition payments, and e-mail correspondence with USSA), the record is bereft of any

evidence that USSA knew of Chen's whereabouts at the relevant times. There is simply no basis for a reasonable inference, let alone a finding, that USSA knew, prior to Chen's filing of his complaint, that he had accessed the online learning platform from Massachusetts, unsuccessfully attempted to log in from Massachusetts, or made tuition payments while in Massachusetts. See id. at 117 (finding no specific jurisdiction when plaintiff moved to forum years after enrolling in distance learning program, without updating school "records to reflect her move"). So, too, we are unable to discern any evidentiary predicate for a finding that USSA corresponded with Chen about his reenrollment with knowledge that he had moved to Massachusetts.[8]

A defendant cannot be said to have purposefully availed itself of the benefits of a forum with respect to a given plaintiff when it has neither initiated any in-forum activity involving that plaintiff nor dealt with him knowing that he was located in the forum. See PREP Tours, 913 F.3d at 19 (explaining that purposeful availment requirement "represents a rough quid pro quo" triggered only when "defendant deliberately targets its behavior toward" forum (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011))); Phillips, 530 F.3d at 28-29 (finding no

---

[8] The e-mails between Chen and USSA are nowhere to be found in the record. A party cannot plausibly request a court to draw inferences from communications that the party has not seen fit to make part of the record.

purposeful availment even when defendant knew plaintiff resided in forum, mailed contract there, and followed up by e-mail). Simply put, jurisdiction cannot be carted from state to state, enabling a plaintiff to sue in any state to which he chooses to roam. See Harlow v. Children's Hosp., 432 F.3d 50, 63 (1st Cir. 2005) (noting that in personam jurisdiction "does not travel with the plaintiff . . . wherever [he] goes").

Given the absence of any facts indicating that USSA knew of Chen's relocation to Massachusetts before he brought suit, the case-specific contacts upon which Chen relies can only be seen as rooted in his own unilateral activities. Consequently, there is no principled way we can conclude that USSA purposefully availed itself of the privilege of doing business in Massachusetts when dealing with Chen. See PREP Tours, 913 F.3d at 20; Plixer, 905 F.3d at 9. The district court's declination of specific jurisdiction was, therefore, unimpugnable.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the dismissal of Chen's complaint for want of jurisdiction is

**Affirmed.**