# United States Court of Appeals
## For the First Circuit

No. 21-1226

MOTUS, LLC, a Delaware Limited Liability Company,

Plaintiff, Appellant,

v.

CARDATA CONSULTANTS, INC., a Canada Corporation,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and McConnell,* District Judge.

Jeffrey K. Riffer, with whom Julie Z. Kimball, Elkins Kalt
Weintraub Reuben Gartside LLP, Geoffrey M. Raux, Andrew C. Yost,
and Foley & Lardner LLP were on brief, for appellant.
Leah R. Bruno, with whom Philip A. O'Connell, Jr., Tony K.
Lu, and Dentons US LLP were on brief, for appellee.

January 18, 2022

---

* Of the District of Rhode Island, sitting by designation.

**SELYA**, **Circuit Judge**.  Once challenged, in personam jurisdiction cannot be assumed into existence but, rather, must be demonstrated by the party who asserts it.  This appeal illustrates the frailty of a litigation strategy that disregards this baseline rule.

In the underlying suit, plaintiff-appellant Motus, LLC (Motus) contends that defendant-appellee CarData Consultants, Inc. (CarData) committed trademark infringement and related wrongs by using a particular phrase in the meta title of its website.[1]  After Motus sued CarData in the United States District Court for the District of Massachusetts, CarData moved to dismiss for want of in personam jurisdiction.[2]  The district court dismissed Motus's suit without prejudice and denied its request for jurisdictional discovery.  Motus appeals.  After careful consideration, we affirm.

**I**

We start with the rudimentary facts.  In view of the nascent stage at which this action was dismissed, "we — like the district court — take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the

---

[1] A "meta title" comprises the text that appears on a browser tab or in the headline for a web search result.

[2] At the same time, CarData sought dismissal for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  The district court did not reach this issue and, therefore, we do not elaborate upon it.

- 2 -

record, giving credence to the plaintiff's version of genuinely contested facts" and accounting for "undisputed facts put forth by the defendant." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). In that process, we eschew any reliance on "unsupported allegations." Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 6 (1st Cir. 2018).

Motus and CarData are both firms that, among other things, provide tools for managing businesses' reimbursement of employee expenses (such as employees' use of personal automobiles for business travel). Motus is a Delaware limited liability company that has its principal place of business in Boston, Massachusetts. CarData is a Toronto-based Canadian corporation. At the heart of the parties' dispute is a claimed trademark embodying the phrase "corporate reimbursement services" (the Phrase), in which Motus allegedly had developed proprietary rights.

As of the fall of 2019, the meta title of CarData's website (https://www.cardataconsultants.com/) read "Corporate Reimbursement Services, Vehicle Reimbursement Program | CarData." On November 5, 2019, Motus wrote to CarData asking that it remove the Phrase from the meta title. Within three days, CarData complied. Motus nonetheless filed suit against CarData, invoking the Lanham Act, 15 U.S.C. §§ 1051-1129, and seeking damages for trademark infringement, trademark dilution, and unfair

- 3 -

competition. Its complaint also contained a number of supplemental state-law causes of action and prayers for additional remedies. The centerpiece of the action was Motus's allegation that it had developed "strong rights" in the use of the Phrase and that CarData had improperly coopted the Phrase.

As relevant here, CarData moved to dismiss for lack of in personam jurisdiction. See Fed. R. Civ. P. 12(b)(2). CarData argued that Motus had failed to plead a prima facie case for personal jurisdiction because "[w]hile [Motus] allege[d] that CarData maintains a [w]ebsite, it says nothing about how or why this Court would have jurisdiction over [CarData] as a result of the operation of that site and the only conduct of CarData identified in the Complaint relates to CarData's use of descriptive words in connection with that [w]ebsite." In support, CarData filed an affidavit and other exhibits.

Motus opposed the motion, arguing that CarData had "purposefully availed itself of the privilege of conducting activities within the U.S. and Massachusetts by, among other reasons (a) maintaining numerous offices in the United States and (b) marketing itself to and interacting with U.S. and Massachusetts customers through its website." To buttress its argument, Motus pointed to language and functionalities on CarData's website:

- "CarData's website claims that 'CarData is North America's reliable source for "best in class" vehicle

- 4 -

reimbursement solutions.'" (emphasis supplied by Motus)

- "CarData's website claims that '[w]ith offices in Denver, New York[,] and Toronto, CarData clients range across industries, from Fortune 500 corporations to regional businesses.'"

- CarData's website claims that "its online application allows customers to '[e]nter information into CarData Online, and it instantly calculates reimbursement specific to each driver's fixed and variable costs.'" (alteration by Motus)

- CarData's website — specifically the "'Our Solutions' and 'Contact Us'" pages on the website — "invite[s] users to 'Get a Free Consultation' or 'Request a Demo.'" The message box "asks users to submit information to CarData, including the user's name, email address, company name, number of drivers, and phone number, and states that a CarData representative will contact the user 'shortly to schedule a free consultation.'"

In addition, Motus proffered exhibits describing the aforementioned features of CarData's website and noted that "[n]o part of the website prohibits or discourages the participation of Massachusetts users." And in a single sentence and accompanying

footnote, it asked the court — if it was disposed to grant the motion to dismiss for want of in personam jurisdiction — to allow it to conduct jurisdictional discovery.

CarData rejoined that the website content and functionalities did not show contacts with Massachusetts sufficient to permit the exercise of personal jurisdiction there. It also resisted Motus's contingent request for jurisdictional discovery.

The district court granted CarData's motion to dismiss. In a thoughtful rescript, it "conclude[d] that the purposeful availment requirement [wa]s not met because there [wa]s not 'something more' connecting CarData to the forum state beyond its website which is available to anyone with internet access, in any state." Motus, LLC v. CarData Consultants, Inc., 520 F. Supp. 3d 87, 92 (D. Mass. 2021). What is more, the court denied Motus's contingent request for jurisdictional discovery, noting that Motus had not acted diligently to "present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 94 (quoting United States v. Swiss Am. Bank, Ltd. (Swiss Am. II), 274 F.3d 610, 626 (1st Cir. 2001)). This timely appeal followed.

## II

It is common ground that a plaintiff, confronted with a motion to dismiss for want of in personam jurisdiction, must carry

the burden of showing that personal jurisdiction is both statutorily authorized and consistent with the constitutional requirements of due process. See, e.g., Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020); United States v. Swiss Am. Bank, Ltd. (Swiss Am. I), 191 F.3d 30, 36 (1st Cir. 1999). There are several barometers that may be used to determine whether a plaintiff has carried that burden, and the choice of which barometer is appropriate is informed by considerations such as the relative development of the record and the extent to which the jurisdictional issue is intertwined with the merits. See Chen, 956 F.3d at 51; Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-46 (1st Cir. 1995).

Where, as here, a motion to dismiss for want of in personam jurisdiction is made at the inception of the case and the issue of jurisdiction is not intertwined with the merits, the prima facie approach controls. See Foster-Miller, 46 F.3d at 145-46; Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 676 (1st Cir. 1992). That approach "ask[s] only whether the plaintiff has proffered facts that, if credited, would support all facts 'essential to personal jurisdiction.'" Chen, 956 F.3d at 51 (quoting Foster-Miller, 46 F.3d at 146). When — as in this case — "a district court dismisses a case for lack of personal jurisdiction based on the prima facie record, rather than after an evidentiary hearing or factual findings, our review is de novo." Baskin-Robbins, 825

F.3d at 34 (quoting C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)).

Subject-matter jurisdiction in this case is premised chiefly on the existence of a federal question. See 28 U.S.C. § 1331; see also 15 U.S.C. § 1121. In the mine-run of federal question cases, Federal Rule of Civil Procedure 4(k)(1) erects the framework for establishing personal jurisdiction by service of process. Under this framework, personal jurisdiction may derive either from a state long-arm statute that sets the boundaries of a state court's jurisdictional reach or from a federal statute permitting nationwide personal jurisdiction by service of process. See Fed. R. Civ. P. 4(k)(1)(A); (C). Here, the forum state is Massachusetts and there is no federal statute specially authorizing nationwide personal jurisdiction. Consequently, we must look to the compendium of Massachusetts statutes. See Swiss Am. I, 191 F.3d at 37.

Massachusetts has a long-arm statute. See Mass. Gen. Laws ch. 223A, § 3. To establish the existence of in personam jurisdiction, a plaintiff who seeks to hale a defendant into court in a particular forum not only must comply with the forum's long-arm statute but also must show that exercising such jurisdiction will comport with the requirements of due process. See Chen, 956 F.3d at 54.

Of course, objections to personal jurisdiction may be waived. See Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016). If a defendant limits its jurisdictional objection to either statutory grounds or constitutional grounds, the court need only consider those particular grounds. See id. So it is here: in the district court, CarData objected to jurisdiction only on constitutional grounds. We circumscribe our analysis accordingly.

In terms of personal jurisdiction, the touchstone of due process is that the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). In this case, Motus submits that the district court had specific jurisdiction over CarData, arguing (in effect) that CarData's particular engagements with the forum support personal jurisdiction for the limited class of claims that Motus asserts. See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024-25 (2021).[3] To determine whether specific jurisdiction

_____

[3] Specific jurisdiction is different than general jurisdiction, which exists when the defendant's contacts with the forum state are so extensive that it is "essentially at home" in that state and may be sued there for "any and all claims." Ford Motor, 141 S. Ct. at 1024 (quoting Goodyear Dunlop Tires

- 9 -

exists, we look to three criteria:  relatedness, purposeful availment, and reasonableness.  See Ford Motor, 141 S. Ct. at 1024; Chen, 956 F.3d at 59.

"First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum."  Chen, 956 F.3d at 59.  "Second, the defendant's forum-state contacts must 'represent a purposeful availment of the privilege of conducting activities in that state.'"  Id. (quoting Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018)).  Finally, "the exercise of specific jurisdiction in the forum must be reasonable under the circumstances."  Id.  The plaintiff must carry the devoir of persuasion on all three of these elements, and the plaintiff's failure as to any one of them defenestrates its claim of specific jurisdiction.  See id.

**III**

Against this backdrop, Motus's arguments on appeal boil down to four principal assignments of error.  First, it argues that the district court misconstrued the prima facie approach because it did not require CarData to produce evidence showing a lack of contacts with Massachusetts.  Second, it argues that the district court erred in concluding that Motus had not made out a sufficient prima facie case for personal jurisdiction over CarData

Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).  In this case, Motus makes no claim of general jurisdiction.

- 10 -

in Massachusetts. Third, it argues that the district court should have found in personam jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Fourth, it argues that the district court abused its discretion in rejecting Motus's passing request for jurisdictional discovery.[4] We address these arguments sequentially.

**A**

Motus asserts that it was not required to plead facts showing personal jurisdiction. In its view, CarData had the burden of adducing evidence showing the absence of contacts within the forum state, and CarData waived its jurisdictional defense by failing to adduce any such evidence. Motus's assertion places the shoe on the wrong foot and misallocates the parties' burdens.

As a technical matter, Motus is correct in stating that it was not required to plead facts in its complaint sufficient to

---

[4] Motus also suggests that the district court erred in withholding leave to amend its complaint. Motus, however, requested leave to amend below only with respect to CarData's effort to have the complaint dismissed for failure to state a claim. See supra note 2. Because Motus never requested that the district court grant leave to amend with respect to CarData's effort to dismiss for want of in personam jurisdiction, Motus has waived any right to argue for that anodyne here. See United States v. Adams, 971 F.3d 22, 37 (1st Cir. 2020) (explaining that a "party cannot ask the court of appeals for relief that he did not seek in the district court"); see also Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").

show personal jurisdiction. See Baskin-Robbins, 825 F.3d at 34. Under the prima facie approach, the plaintiff may plead sufficient jurisdictional facts in its complaint, may rely on jurisdictional facts documented in "supplemental filings (such as affidavits) [] contained in the record," and/or may point to "undisputed facts." Id. In this instance, however, Motus not only failed to plead sufficient jurisdictional facts but also failed to proffer any such facts in supplemental filings. Although it submitted exhibits bearing on the content and functionality of CarData's website, none of these exhibits strengthened its jurisdictional hand. As the district court observed, Motus "put forward no evidence showing that CarData . . . actually and purposefully conducted business with Massachusetts residents through its website." Motus, 520 F. Supp. 3d at 92-93.

Even though a plaintiff need not plead facts that suffice to ground the exercise of in personam jurisdiction, it must — if challenged — ensure that the record contains such facts. See Baskin-Robbins, 825 F.3d at 34; Foster-Miller, 46 F.3d at 145. Motus wholly failed to carry this burden. The upshot is a record devoid of anything indicating that CarData either did business with Massachusetts residents or specifically targeted such residents.

To be sure, Motus points to CarData's website to fill this conspicuous void. But CarData's website does not contain

- 12 -

content that is any more likely to solicit or serve customers in Massachusetts than anywhere else.

In an effort to turn this void to its advantage, Motus suggests that CarData was required to prove a negative:  that CarData was required to produce evidence as to its lack of contacts with Massachusetts.  Only then, Motus suggests, would Motus be obliged to make out a prima facie case for jurisdiction.  This suggestion is topsy-turvy:  it turns upside-down the principle that "the burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff." Chen, 956 F.3d at 54.  A plaintiff cannot carry this burden simply by playing possum and proclaiming that the burden belongs to the defendant.  It is the plaintiff's obligation to proffer facts that adequately make out a case for jurisdiction before any burden devolves upon the defendant to proffer contrary facts.

**B**

We turn next to the question of whether, on the existing record, Motus made out a prima facie case for personal jurisdiction over CarData in Massachusetts.  We think not.

We need not tarry over the matter of statutory authorization.  Although we recently have "suggested that Massachusetts' long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution," Copia, 812 F.3d at 4 (discussing Mass. Gen. Laws

- 13 -

ch. 223A, § 3), it would serve no useful purpose to explore those differences here. To dispose of this appeal, it suffices to say that Motus has not satisfied the federal constitutional requirements for the exercise of in personam jurisdiction.

Because Motus argues only for specific jurisdiction, the three elements of that inquiry are dispositive. See Chen, 956 F.3d at 59. To succeed on its claim, Motus must satisfy all of those elements — relatedness, purposeful availment, and reasonableness. See id. In website cases, we have recognized that the "purposeful availment" element often proves dispositive. See, e.g., id.; Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 35-36 (1st Cir. 2010). We begin — and end — there.

In assessing whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting business in the forum, we look to the voluntariness of the contacts and the foreseeability of being haled into court based on those contacts. See Chen, 956 F.3d at 59. "[V]oluntariness demands that the defendant's contacts with the forum result proximately from its own actions." Id. Foreseeability demands that "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Under this binary standard, "a finding of purposeful

availment necessarily requires more than the unilateral activities of third parties." Chen, 956 F.3d at 59; see Plixer, 905 F.3d at 9.

For example, a corporation's specific targeting of a forum's residents may show voluntariness. See Calder v. Jones, 465 U.S. 783, 789 (1984); Plixer, 905 F.3d at 9. So, too, a corporation's "'regular course of sale in the forum' [may] make the exercise of jurisdiction foreseeable." Chen (quoting Knox v. MetalForming, Inc., 914 F.3d 685, 691 (1st Cir. 2019)); see Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 117 (1987) (Brennan, J., concurring in part and in the judgment). In addition, there may be "'plus' factors evincing a corporate defendant's deliberate attempt to serve the forum state, that is, factors indicating something over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce." Chen, 956 F.3d at 59-60; see Ford Motor, 141 S. Ct. at 1028 (noting myriad of plus factors indicating awareness that after-market vehicles were entering forum).

Against this backdrop, Motus proposes two theories for purposeful availment sufficient to support specific jurisdiction. We consider each theory separately.

**1**

Motus's principal route to purposeful availment runs through CarData's operation of a website that is available to serve

Massachusetts residents and its maintenance of offices elsewhere in the United States (Colorado and New York). This route is a dead end.

The mere availability of a primarily informational website is not enough — by itself — to render a defendant susceptible to jurisdiction in a particular forum. See Chen, 956 F.3d at 60; A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016). "Otherwise, the universality of websites in the modern world would overwhelm constitutional limitations" and render website operators amenable to suit anywhere within the vast reach of the internet. Chen, 956 F.3d at 60. To establish specific jurisdiction, there must be more. See Cossaboon, 600 F.3d at 35.

In the case at hand, there is no "more." When assessing whether a defendant's commercial operation of a website amounts to purposeful availment, we typically look to factors such as evidence of specific targeting of forum residents and evidence that the website has generated "substantial revenue from forum residents." Chen, 956 F.3d at 60; see Plixer, 905 F.3d at 9-10. Here, however, Motus has adduced no such evidence. Nothing in the record indicates that CarData has sought to serve Massachusetts residents at all, let alone that CarData has sought to serve Massachusetts residents in particular. CarData's styling of itself as the "best in class" provider of corporate reimbursement services in "North America" and the fact that it apparently sells some services in

the United States are unilluminating as to what, if any, commercial links it may have with Massachusetts. Nor does CarData's maintenance of offices in Colorado and New York, without more, support Motus's claim of specific jurisdiction in Massachusetts.

We acknowledge that CarData's website identifies means for potential customers — including those in Massachusetts — to reach out to CarData. There is nothing in the record, though, indicating that even a single Massachusetts resident has accepted this invitation. By the same token, there is nothing in the record indicating that CarData has initiated any contacts with, or has responded to, any Massachusetts residents. In a nutshell, Motus left the district court to guess whether CarData has any Massachusetts customers, receives any revenue from Massachusetts, or has any other business connection with Massachusetts. Jurisdiction cannot be premised on guesswork, and the record does not support a finding that the operation of CarData's website and/or its commercial contacts elsewhere in the country constitute purposeful availment with respect to Massachusetts.

## 2

Motus has a fallback position. Motus alleges that by using the Phrase in the meta title of its website, CarData committed intentional torts (trademark infringement and the like) that caused injury to Motus (a Massachusetts company). Because CarData's intentional tortious conduct was directed at a

Massachusetts corporation, Motus's thesis runs, jurisdiction lies in Massachusetts.

The premise underlying this position is sound: intentional tortious conduct causing an injury in a given state may in certain circumstances constitute purposeful availment and, thus, give rise to specific jurisdiction in that state. See Calder, 465 U.S. at 789 (finding specific jurisdiction when defendants' intentional tortious conduct was "expressly aimed at [the forum state]"). Even so, Motus has failed to show that this premise applies here.

The Calder approach makes eminent sense as applied to intentional torts directed at a particular victim. The conduct is voluntary, and the tortfeasor can reasonably foresee that the location of the victim is likely to be the place where he will be haled into court. This logic loses some coherence in cases in which it is unclear that the conduct is tortious, let alone that there is a victim. Trademark infringement is a paradigmatic example because the defendant need not know it is infringing another's mark in order for its conduct to be actionable. See Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006) (noting that only elements of trademark infringement action are that the "mark merits protection and that the allegedly infringing use is likely to result in consumer confusion"); see also Romag Fasteners, Inc. v. Fossil, Inc., 140

S. Ct. 1492, 1497 (2020).  Taking the Calder approach when such torts are based on web publications would create "a substantial risk that defendants would be dragged into court in foreign jurisdictions with which they had little to no actual contact simply because a trademark holder happened to reside there."  Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 191 (D. Mass. 2012).  It follows that to satisfy the foreseeability requirement for tortious conduct of the kind alleged here, the defendant would have to have known of both the existence of a potential victim and the victim's likely whereabouts.  See Chen, 956 F.3d at 61-62.

That ends this aspect of the matter.[5]  There is nothing in the record showing that CarData knew that Motus existed, let alone that Motus was based in Massachusetts.  Nor is there anything in the record to support an inference that CarData — prior to receiving Motus's cease-and-desist letter — associated the Phrase with Motus.  Motus's attempt to base jurisdiction on a theory of intentional tortious conduct is, therefore, unavailing.

C

Motus has another arrow in its quiver.  This arrow is fashioned from Federal Rule of Civil Procedure 4(k)(2), which

---

[5] Motus's failure to make a prima facie showing of purposeful availment makes it unnecessary for us to consider what the record shows as to either relatedness or reasonableness.  See Chen, 956 F.3d at 59.

provides a means for obtaining in personam jurisdiction when "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" yet the exercise of "jurisdiction [in the United States] is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Motus asseverates that, given CarData's contacts with the United States as a whole, Rule 4(k)(2) applies. We reject Motus's asseveration.[6]

When Rule 4(k)(2) is put in play, a burden-shifting framework applies. See Swiss Am. I, 191 F.3d at 41. To begin, the plaintiff must make out a prima facie case for federal jurisdiction. Such a case consists of a showing "(1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements." Id. That three-part showing must be accompanied by a certification to the effect that, "based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general

_____

[6] CarData claims that this line of argument was not preserved below and, thus, engenders only plain error review. See, e.g., Ira Green, Inc. v. Mil. Sales & Serv. Co., 775 F.3d 12, 26 (1st Cir. 2014). Motus demurs. We need not resolve this contretemps: even assuming, favorably to Motus, that the line of argument was preserved and that de novo review applies, the argument nonetheless fails.

jurisdiction of any state." Id. It is only when the plaintiff has satisfied these requirements that "the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient." Id. Unless and until the plaintiff has carried his initial burden of production, the defendant has no burden at all.

The certification is a necessary component of the showing that the plaintiff must make. Here, however, Motus never produced the required certification in the district court and, thus, never carried its initial burden. See Motus, 520 F. Supp. 3d at 90-91 (observing that "nothing in the record indicates that defendant is excluded from jurisdictional reach of every state").

In an effort to ease the sting of this failure, Motus contends that CarData had an antecedent burden to show that one or more specific states exists in which it would be subject to suit. This contention puts the cart before the horse: CarData had no obligation to show that it was subject to suit in some state unless and until Motus met its initial burden. See Swiss Am. I, 191 F.3d at 41-42; see also Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 215 (4th Cir. 2002) (discussing requirement for initial showing). We hold that Motus's failure to provide the required certification sounds the death knell for

Motus's attempted invocation of Rule 4(k)(2). See Swiss Am. I, 191 F.3d at 41 (explaining that "a plaintiff who seeks to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule"). Consequently, Motus's arrow lands wide of the mark.[7]

**D**

In a last-ditch effort to snatch victory from the jaws of defeat, Motus asserts that the district court abused its discretion in refusing to allow Motus to conduct jurisdictional discovery. This assertion rests on a flimsy foundation: Motus did not move for jurisdictional discovery in the district court but, rather, merely mentioned the option of jurisdictional discovery in its opposition to CarData's motion to dismiss.

If a party anticipates that jurisdictional discovery may be needed, the best way to ensure that a request for jurisdictional discovery is preserved for appeal if denied is to file a timely motion. After all, it is elementary that a "request for a court order must be made by motion," Fed. R. Civ. P. 7(b), and that an informal request for a court order ordinarily will not suffice to preserve a party's rights, see 5 Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice & Procedure Civil

---

[7] Although the absence of a certification is fatal in and of itself, we note — for the sake of completeness — the existence of record evidence that CarData maintains offices both in Colorado and in New York. Motus has not offered any reason to believe that CarData is not subject to jurisdiction in the courts of those states.

§ 1191 (4th ed. 2021). Of course, district courts have a certain amount of leeway to treat informal requests for jurisdictional discovery made in opposition papers as if made by motion when there is no prejudice to the other party, and the district court did so here. See id.; Motus, 520 F. Supp. 3d at 94.

Unlike videos on the C-SPAN website, jurisdictional discovery is not available on demand. Instead, a plaintiff who seeks jurisdictional discovery must make "a colorable claim of jurisdiction" and must show that it "has been diligent in preserving [its] rights to be entitled to jurisdictional discovery." Swiss Am. II, 274 F.3d at 625-27. The threshold is low: a party must identify a non-frivolous dispute about facts that may yield a sufficient predicate for in personam jurisdiction. See Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008).

A "timely and properly supported request for jurisdictional discovery merits solicitous attention." Swiss Am. II, 274 F.3d at 625 (quoting Swiss Am. I, 191 F.3d at 45). Even so, the district court possesses "broad discretion" to determine whether jurisdictional discovery is warranted. Id. at 626. We review decisions granting or denying jurisdictional discovery solely for abuse of discretion. See Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 23 (1st Cir. 2007). This standard is deferential, and an order denying jurisdictional discovery will be overturned "only upon a clear showing" that "the lower court's

- 23 -

discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Swiss Am. II, 274 F.3d at 626 (quoting Crocker v. Hilton Int'l Barbados, Ltd., 976 F.2d 797, 801 (1st Cir. 1992)).

Motus's request for jurisdictional discovery comprised a single conclusory sentence, accompanied by a footnote, and contained no indication of what facts might be developed through discovery. With nothing more before it, the court below concluded that jurisdictional discovery was unwarranted because Motus did not act diligently to preserve its rights. See Motus, 520 F. Supp. 3d at 94. Given Motus's utter failure to explain why jurisdictional discovery was appropriate and what relevant information it hoped to glean through such discovery, the court further concluded that granting its request promised to be an exercise in futility. See id.

These conclusions were not "plainly wrong." Swiss Am. II, 274 F.3d at 626. In view of the barebones nature of Motus's presentation, we cannot say that the district court abused its broad discretion in denying jurisdictional discovery. See id. at 626-27 (affirming denial of jurisdictional discovery because "only on appeal did the government flesh out its description of contacts it hope[d] to discover").

## IV

We need go no further.  For the reasons elucidated above, the district court's order dismissing the action without prejudice for want of in personam jurisdiction is

**Affirmed**.  Costs shall be taxed in favor of CarData.